EXHIBIT 1

VIRGINIA:
IN THE CIRCUIT COURT FOR THE CITY OF CHESAPEAKE

| | | |
|---|---|---|
| JULIE LOCANAS-CARTER and<br>ADRIAN C. CARTER,<br>Plaintiffs,<br>v.<br>EXTRA SPACE STORAGE, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>) | Case No. CL26.5361 |

**COMPLAINT AND JURY DEMAND**

COME NOW the Plaintiffs, Julie Locanas-Carter and Adrian C. Carter, proceeding pro se, and for their Complaint against Defendant Extra Space Storage, Inc., state as follows:

**I. PARTIES, JURISDICTION, VENUE, AND RECOMMENCEMENT**

1. Plaintiff Julie Locanas-Carter is an individual using 1627 East Holt Blvd, Ontario, California 91761 as a mailing address and was the signatory tenant on the Chesapeake self-storage leases at issue.

2. Plaintiff Adrian C. Carter is an individual using 1627 East Holt Blvd, Ontario, California 91761 as a mailing address, is Julie Locanas-Carter's spouse, is a co-owner and/or lawful possessor of much of the stored property at issue, and was a direct recipient of Defendant's marketing and account-related representations.

3. Defendant Extra Space Storage, Inc. operated, directly and/or through its employees, managers, and agents, the self-storage facility located at 659 Woodlake Drive, Chesapeake, Virginia 23320, also referenced in account records as 1583 - Chesapeake - Woodlake Dr.

4. This Court has subject matter jurisdiction over this civil action.

5. Venue is proper in this Court because the operative acts, omissions, billing practices, access-control failures, notices, property loss, and related injuries occurred in Chesapeake, Virginia, and the units and property at issue were located there.

6. The claims of both Plaintiffs arise out of the same transaction or occurrence and involve

common questions of law and fact.

7. Plaintiffs previously commenced an action arising from the same Chesapeake transactions and occurrences alleged herein in Civil Action No. CL25008294-00. By order entered on January 5, 2026, Plaintiffs suffered a voluntary nonsuit, and Plaintiffs recommence this action pursuant to Va. Code Ann. § 8.01-229(E)(3). This recommenced action is brought in the same court consistent with Va. Code Ann. § 8.01-380(A).

## II. FACTUAL ALLEGATIONS

8. Defendant offered self-storage units and related insurance-connected products and services to consumers at the Chesapeake facility, including Unit 1327 and Unit 1350.

9. Before and during the rental relationship, Defendant marketed the Chesapeake facility as secure and professionally managed, including representations concerning an on-site resident manager, exceptional security, controlled access, and video surveillance.

10. Adrian saw and relied on those security and facility representations before deciding that property should be stored at the Chesapeake facility.

11. Julie signed the lease paperwork for the Chesapeake units. Adrian did not sign those Chesapeake leases, but he owned and/or possessed a substantial portion of the property stored in the units and was directly injured by Defendant's conduct.

12. Defendant's lease and insurance materials represented, in substance, that the customer must maintain comprehensive insurance coverage for stored property, that any lapse or failure to maintain such coverage would leave the customer bearing all risk of loss, and that Defendant's offered storage-insurance product was being presented in connection with the rental transaction.

13. The same transaction materials also stated that purchase of self-storage insurance was not required to lease a unit, while simultaneously presenting insurance-maintenance language in a manner that Plaintiffs allege was confusing, coercive, and misleading.

14. The insurance materials identified Occidental Fire & Casualty Company of North

Carolina as the named insurer and identified insurance intermediaries in connection with the offered insurance product.

15. Defendant's insurance materials further stated that insurance could terminate automatically without notice if premium was not paid in full.

16. The insurance materials for Unit 1350 later reflected cancellation effective December 28, 2023, and Defendant or its insurance-related representatives later took the position that no active coverage existed on April 4, 2024.

17. Plaintiffs made payments to preserve the storage relationship and prevent loss, including a payment of $473.00 on or about January 31, 2024.

18. Between approximately March 26, 2024, and April 10, 2024, unauthorized entry, lock interference, and property loss occurred in or around Units 1327 and 1350.

19. An employee informed Plaintiffs that the lock had been cut, and the surrounding circumstances indicated unauthorized entry and interference with the unit rather than an ordinary or harmless event.

20. At or around the same period, the facility had broken gates and other security failures, lacked a live on-site resident manager as advertised, and had persons loitering or otherwise present at the facility in a manner inconsistent with the security representations made to Plaintiffs.

21. Chesapeake Police Department Case Nos. 2024-00043899 and 2024-38569 were opened in connection with the reported loss and theft-related events.

22. Plaintiffs were provided or shown surveillance-related material that was unplayable, and Defendant never replaced that material with a usable copy despite the obvious importance of that evidence to the loss.

23. Plaintiffs have documented that the units contained substantial personal property, including collectibles, coins, trading cards, dolls, toys, clothing, memorabilia, tools, electronics, and other high-value personal items.

24. Plaintiffs' present inventory and valuation work is ongoing and incomplete. Existing

schedules reflect only a preliminary and partial itemization of missing property and do not fully capture all categories of lost collectibles, coins, trading cards, memorabilia, disputed charges, consequential losses, and non-economic harm.

25. Defendant also sent communications labeled or framed as "No Action Required" while allegedly obscuring or concealing material account changes, addenda, fee consequences, and other terms that Plaintiffs contend were material to the rental relationship and to their decisions to continue paying and storing property.

26. Defendant's ledger and billing history include disputed late fees, insurance-related charges, and pre-foreclosure or lien-related charges.

27. To the extent Defendant contends those charges were part of a lien-enforcement process, Plaintiffs contend Defendant did not provide the compliant statutory notice and proof of delivery required before enforcing a lien or proceeding toward advertisement, sale, or disposition of stored property.

28. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered loss of property, out-of-pocket charges, fees, consequential losses, and other damages.

29. As a further direct and proximate result of Defendant's conduct, Plaintiff Adrian C. Carter suffered substantial emotional and psychological harm, including depression-related symptoms, worsening mood-related symptoms, difficulty concentrating, psychiatric referral, behavioral-health treatment, and medication management.

30. Plaintiffs presently demand judgment in the amount of $150,000.00, together with any enhanced statutory damages authorized by law, court costs, interest as allowed by law, and such other and further relief as the Court deems just and proper.

## III. COUNT IVIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACTVa. Code Ann. §§ 59.1-196 to 59.1-207

31. Plaintiffs reallege and incorporate paragraphs 1 through 30 as though fully set forth

herein.

32. Plaintiffs are persons who engaged in consumer transactions with Defendant for self-storage services and related insurance-connected products and services.

33. Defendant used deceptive and misleading practices in connection with those consumer transactions, including but not limited to:

a. marketing the Chesapeake facility as having an on-site resident manager, exceptional security, controlled access, and surveillance when the actual conditions were materially different;

b. presenting insurance as practically mandatory or coercive while simultaneously stating that purchase of the offered insurance was not required to lease the unit;

c. using "No Action Required" communications and related account messages in a manner that obscured material changes, addenda, and fee consequences; and

d. labeling charges as pre-foreclosure or lien-related without clearly and fairly disclosing the contractual and statutory basis for those charges.

34. The foregoing conduct constituted deceptive practices in consumer transactions within the meaning of the Virginia Consumer Protection Act, including Va. Code Ann. § 59.1-200.

35. Adrian saw and relied on Defendant's security and facility representations before deciding that property should be stored at the Chesapeake facility.

36. Julie relied on Defendant's representations concerning the facility, account charges, insurance presentation, and the apparent legitimacy of the rental and billing process when she entered into and maintained the rental relationship.

37. Defendant knew or should have known that its statements, omissions, and account communications were misleading when made.

38. Defendant's deceptive acts and practices were willful within the meaning of Va. Code Ann. § 59.1-204(A), in that Defendant knowingly used misleading insurance

presentations, misleading account communications, and misleading security-related representations in connection with Plaintiffs' consumer transactions.

39. As a result of Defendant's conduct, Plaintiffs suffered loss and damages and are entitled to relief under Va. Code Ann. § 59.1-204, including actual damages or $500, whichever is greater, and, upon a finding of willfulness, enhanced damages in an amount not exceeding three times actual damages or $1,000, whichever is greater.

## IV. COUNT IIFRAUDULENT INDUCEMENT

40. Plaintiffs reallege and incorporate paragraphs 1 through 39 as though fully set forth herein.

41. Before and during the formation and continuation of the Chesapeake storage relationship, Defendant, through its website, facility marketing, lease materials, insurance materials, employees, and account communications, represented that the facility had an on-site resident manager, exceptional security, controlled access, and reliable security-related conditions.

42. Defendant also presented insurance-related information in a manner that blurred the distinction between an obligation to maintain some insurance and the separate question whether Defendant's offered product had to be purchased through Defendant's transaction flow.

43. These representations and omissions were material to Plaintiffs' decisions to rent, continue renting, pay charges, and keep their property at the Chesapeake facility.

44. At the time the representations were made, Defendant knew or should have known they were false or misleading because the facility did not in fact have the security conditions represented, the access conditions were compromised, and the insurance presentation was misleading and coercive.

45. Defendant made those representations and omissions with the intent to induce Plaintiffs to enter into, continue, and pay under the storage relationship.

46. Adrian specifically relied on the security and resident-manager representations in deciding that property should be stored there.

47. Julie specifically relied on Defendant's representations in signing and continuing the rental relationship and in paying charges connected to the units.

48. Plaintiffs were damaged as a direct result of that reliance.

## V. COUNT IIIGROSS NEGLIGENCE

49. Plaintiffs reallege and incorporate paragraphs 1 through 48 as though fully set forth herein.

50. Defendant owed Plaintiffs a duty to use reasonable care in operating the facility, controlling access, responding to known security issues, handling lock or gate issues, and responding to known or reasonably foreseeable risks affecting stored property.

51. Defendant acted with such indifference to Plaintiffs' rights that its conduct amounted to gross negligence, including failing to maintain or monitor the facility as represented, allowing or failing to prevent unauthorized access, failing to promptly disclose the lock-cut and loss conditions, and failing to preserve and provide usable incident-related video or surveillance material after the loss.

52. Defendant's conduct went beyond mere inadvertence and showed an utter disregard for the prudence required to safeguard Plaintiffs' property under the circumstances alleged.

53. Plaintiffs were damaged by Defendant's gross negligence in an amount to be proven at trial but included within the $150,000.00 demanded herein.

## VI. COUNT IVCONVERSION

54. Plaintiffs reallege and incorporate paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiffs owned and/or had lawful possessory interests in property stored in Units 1327 and 1350.

56. On information and belief, Defendant, directly or through its agents or employees,

caused, authorized, ratified, knowingly facilitated, or knowingly retained the benefits of unauthorized entry and interference with the units and locks and thereafter exercised dominion or control over Plaintiffs' property inconsistent with Plaintiffs' ownership and possessory rights.

57. To the extent Plaintiffs' contents were removed, disposed of, transferred, sold, withheld, not returned, or otherwise treated as subject to Defendant's dominion or control without lawful justification, such conduct constitutes conversion.

58. Defendant's conduct deprived Plaintiffs of their property and caused damages in an amount to be proven at trial but included within the $150,000.00 demanded herein.

### VII. COUNT VBREACH OF CONTRACTJulie Locanas-Carter Only

59. Julie realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

60. Julie and Defendant entered into rental agreements for Chesapeake Units 1327 and 1350.

61. Defendant was obligated to comply with the written lease terms, including terms concerning charges, notices, access, account administration, and lien-related procedures.

62. Defendant breached the lease by assessing and collecting charges not properly authorized or not properly disclosed, failing to provide required notices before escalating account consequences, and otherwise failing to administer the rental relationship in accordance with the lease terms it drafted and imposed.

63. Defendant further breached the lease to the extent it acted outside any contractual limitations or exemptions by engaging in fraud, gross negligence, or willful violations of law.

64. Julie suffered damages as a direct and proximate result of Defendant's breaches in an amount to be proven at trial but included within the $150,000.00 demanded herein.

### VIII. COUNT VIVIRGINIA SELF-SERVICE STORAGE ACT / WRONGFUL LIEN ENFORCEMENT / DEFECTIVE NOTICEVa. Code Ann. §§ 55.1-2900 to 55.1-2906Julie Locanas-Carter Only

65. Julie realleges and incorporates paragraphs 1 through 64 as though fully set forth herein.

66. If Defendant sought to enforce a lien, assess pre-foreclosure charges as part of lien enforcement, threaten sale of the stored property, or take steps toward advertisement, sale, or disposition of the contents, Defendant was required to comply with the notice and enforcement requirements of the Virginia Self-Service Storage Act.

67. On information and belief, Defendant did not provide Julie with a compliant further notice of default containing the required itemized statement, demand for payment within the statutory cure period, statement that the contents were subject to the owner's lien, and conspicuous warning regarding advertisement or sale, as required by Va. Code Ann. § 55.1-2902(C).

68. On information and belief, Defendant also cannot prove proper delivery of any such statutory notice if disputed, as contemplated by Va. Code Ann. § 55.1-2902(H).

69. Accordingly, any lien-related fees, foreclosure steps, threatened sale, actual sale, disposal, or other lien-enforcement conduct undertaken without statutory compliance was unlawful, defective, and unenforceable.

70. Julie was damaged by that conduct and seeks damages, restitution of improper charges, and any declaratory or other relief allowed by law.

## IX. COUNT VIIUNJUST ENRICHMENTIN THE ALTERNATIVE

71. Plaintiffs reallege and incorporate paragraphs 1 through 70 as though fully set forth herein.

72. To the extent any express contract does not govern one or more disputed charges, fees, or retained payments, Defendant received and retained money and benefits from Plaintiffs under circumstances that make it inequitable for Defendant to retain those benefits without restitution.

73. Plaintiffs plead this count in the alternative and seek restitution of improper charges, fees, insurance-related payments, and other amounts wrongfully retained by Defendant.

## X. DAMAGES

74. Plaintiffs have suffered damages including, without limitation, loss of personal property, loss of use, disputed fees and charges, consequential damages, emotional and psychological harm to the extent allowed under applicable law, and related losses.

75. Plaintiffs presently demand judgment in the amount of $150,000.00.

76. Plaintiffs further seek any enhanced damages authorized by Va. Code Ann. § 59.1-204(A), together with court costs, pre-judgment interest, post-judgment interest, and such other and further relief as the Court deems just and proper.

## XI. JURY DEMAND

77. Plaintiffs demand trial by jury on all issues so triable.

## XII. EXHIBIT INDEX

78. The following exhibits are attached to and incorporated into this Complaint as part of the filing packet:

Exhibit A — Chesapeake Lease Packet(s) for Units 1327 and 1350, including lease, addenda, fee terms, notice terms, arbitration language, and insurance language.

Exhibit B — Insurance Application, Certificate, Cancellation, and Denial Materials.

Exhibit C — Billing Ledger(s), Payment History, and Disputed Charge Records.

Exhibit D — Chesapeake Police Department Incident Report Email Chain and Case References.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows:

A. Award Plaintiffs compensatory damages in the amount of $150,000.00;

B. Award Plaintiffs relief under the Virginia Consumer Protection Act, including actual damages or $500, whichever is greater, and, upon a finding of willful violation, enhanced damages in an amount not exceeding three times actual damages or $1,000, whichever is greater, pursuant to Va. Code Ann. § 59.1-204(A);

C. Award restitution of improper charges, fees, and payments wrongfully retained;

D. Award pre-judgment and post-judgment interest as allowed by law;

E. Award court costs;

F. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Julie Locanas-Carter, Pro Se
1627 East Holt Blvd
Ontario, California 91761
juloc21@gmail.com
562-286-4763

Adrian C. Carter, Pro Se
1627 East Holt Blvd
Ontario, California 91761
adriancscarter@gmail.com
757-633-4038

Exhibit A

# Electronic Record of Contracts

This document was generated as a record of certain contracts created, accepted and stored electronically.

## Summary of Contracts

This document contains the following contracts.

| | | |
|---|---|---|
| Lease - Virginia | 1 | 60282794fe421a5fe4f825f6 |
| CPP - Brochure AS5 | 1 | 60282794fe421a5fe4f8262f |
| CPP - Application Base 160601 | 1 | 60282794fe421a5fe4f82632 |
| CPP - COI 160601 | 1 | 60282795fe421a5fe4f82641 |

## Contracts signed by:

**Julie Carter** Julie Carter

Signer ID: 1503474842
Email: juloc21@gmail.com

Date / Time: Feb 13, 2021 at 12:29 PM MST
IP Address: 174.251.132.6
User Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_6) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.0.3 Safari/605.1.15

**Yasmine Jones**

Signer ID: 500604851@extraspace.com
Email: 500604851@extraspace.com

Date / Time: Feb 13, 2021 at 12:29 PM MST
IP Address: 72.206.51.49
User Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/88.0.4324.150 Safari/537.36

Completed by all parties on:
Feb 13, 2021 at 12:29 PM MST

Exhibit A,

| | |
|---|---|
| **ExtraSpaceStorage.**<br>659 Woodlake Dr<br>Chesapeake VA, 23320<br>(757) 570-9165<br><br>*Professionally managed by:*<br>*EXTRA SPACE MANAGEMENT, INC.*<br>*2795 E. Cottonwood Pkwy, Suite 300*<br>*Salt Lake City, UT 84121*<br>*(888) STORAGE* | **Rental Agreement Date:** Feb 13, 2021<br>**Account ID:** 2000564787<br>**Space Number:** 1327<br>**Approximate Size:** 4x10<br>**Monthly Rental Charge:** $24.00<br>**Monthly Due Date:** 13<br>**Paid Through Date:** 03/12/2021<br>**Monthly Billing Election:** N<br><br>Initials: JJ 500604851@extraspa... |

| **CUSTOMER** | | **ALTERNATE CONTACT** | |
|---|---|---|---|
| Name | Julie Carter | Name | Adrian Carter |
| Address | 14580 Blue Sage Rd | Address | |
| City, State ZIP | Adelanto CA 92301 | City, State ZIP | |
| Cell Phone | (562) 286-4763 | Cell Phone | |
| Alternate Phone | | Alternate Phone | |
| Identification | CA B4161431 10/31/2025 | Authorized for Access? | Access |
| Date of Birth | 10/31/1977 | *If alternate information is refused, Customer must sign here.* | X |
| E-mail | juloc21@gmail.com | | |

**Others Authorized for Access (other than Customer):** ________, ________, ________

* Operator, in its sole discretion, may provide any individual(s) authorized for access in this Agreement with gate code, unit no., account information, and assist with lock cutting

| Addendums | Is there a lien on any of the items to be stored? If yes, Lien Addendum is required. | Is a vehicle that requires state registration being stored? If yes, Vehicle Addendum is required. | Is Customer or Customer's spouse a service member in the military? If yes, Military Addendum is required. | Is Customer a business? If yes, Business Addendum is required. |
|---|---|---|---|---|
| | No | No | No | No |

**General Description of Property Stored:** Household items

**Declared Value of Property Stored:** $2000.00

**Customer acknowledges that the information provided above is accurate and current.** X Julie Carter 1503474842

THIS RENTAL AGREEMENT ("**Agreement**") is executed on the date stated above by and between EXTRA SPACE MANAGEMENT, INC. ("**Operator**") as agent for the Facility's owner, and the individual or business listed above ("**Customer**") for the purpose of renting the space listed above (the "**Space**") which is part of a larger facility (the "**Facility**"). **CUSTOMER HAS EXAMINED THE SPACE AND FACILITY AND ACCEPTS THEM "AS IS." Customer acknowledges and agrees the measurements noted for the Facility and the spaces located thereon are an approximation only, do not refer to usable space and that the size of the Facility and any referenced sizes are approximate, given for illustration only and may vary materially.** Spaces may be smaller or larger than advertised. Spaces are not rented on a square foot basis and rent is not based on square foot measurements. Operator does not represent or guarantee the safety of the Facility or the personal property stored by Customer. **THE RULES AND REGULATIONS POSTED AT THE FACILITY, IF ANY, ARE BY REFERENCE MADE PART OF THIS AGREEMENT,** which rules and regulations may be modified by Operator to assist with the operation, safety, and cleanliness of the Facility. The Facility is operated in accordance with state and local laws governing self-storage facilities in the state where the Facility is located, which are herein incorporated by reference.

**TERM, MONTHLY RENTAL AMOUNTS AND OTHER CHARGES**

1) The term of this Agreement begins on the Rental Agreement Date listed above and shall continue on a **MONTH-TO-MONTH** basis until terminated.
2) The first Monthly Rental Charge and a one-time, non-refundable, administration fee shall be paid on the Rental Agreement Date listed above. Thereafter, the Monthly Rental Charge shall be due on the same day every month (the "**Monthly Due Date**"). The period between consecutive Monthly Due Dates is referred to as the "**Rental Month.**" The last day of the Rental Month for which all Monthly Rental Charges have been paid is the "**Paid Through Date.**" Customer shall pay Operator the Monthly Rental Charge, taxes and insurance in advance, without prior notice or billing from Operator. **NO MONTHLY BILLS OR STATEMENTS WILL BE SENT TO CUSTOMER UNLESS ELECTED ABOVE.** If Customer elects to receive monthly billing, a monthly service charge of $1.00 shall be added to Customer's account.
3) **If Customer does not pay the Monthly Rental Charge by the 5th day following Customer's Paid Through Date, Customer shall pay a late fee of $20.00 or 20% of the Monthly Rental Charge, whichever is greater. Operator may charge a late fee for each month Customer fails to pay the Monthly Rental Charge by the 5th day following the Paid Through Date. Late Fees will be assessed on or after the 6th day following**

Exhibit A 1

**Customer's current Paid Through Date.** Any late fees incurred by Customer are a service charge and not a penalty. Partial payments will not be accepted, however, if a partial payment is accepted it will be at the sole discretion of Operator and if accepted will first be applied to fees and service charges, then to Monthly Rental Charges, taxes and insurance. If at the close of business on the 30th day following the Customer's current Paid Through Date, the Monthly Rental Charge or other charges still remain past due, a pre-foreclosure fee of **$85.00** will be assessed and Customer must pay such amount by cash, credit card, or by certified funds. No personal/company checks will be accepted for past-due payments. It is agreed to and understood that partial payments made to cure a default for nonpayment of rent will not delay or stop foreclosure and sale of Customer's property. The tender of partial payments, if accepted, shall not serve to waive or avoid the legal effect of prior notices given to Customer. Only full payment on Customer's account prior to the published auction date will stop a scheduled sale of the property.

4) **Customer's Rental Terms May Change with 30 Days' Notice.** Customer acknowledges this Lease is month to month and that Owner may change or increase Customer's Monthly Rental Charge, fees and charges, due to changes in market conditions or for any other reason at any time upon 30 days' notice to Customer. Owner may send notice to Customer's email address or by any other method of notice described in Section 30 below. By continuing to use the Space after a rate change, Customer agrees to the Rental Agreement as changed and that all of its other terms remain in effect.

5) **IF CREDIT CARD OR OTHER PAYMENT INFORMATION IS PROVIDED BY CUSTOMER TO OPERATOR, CUSTOMER AUTHORIZES OPERATOR TO AUTOMATICALLY PROCESS THE PAYMENT VIA THE METHOD PROVIDED ON OR NEAR THE MONTHLY DUE DATE FOR MONTHLY RENTAL CHARGES, TAXES, INSURANCE, AND OTHER FEES AS APPLICABLE UNLESS OTHERWISE DIRECTED BY CUSTOMER. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO PROVIDE OPERATOR WITH ACCURATE, CURRENT AND WORKING PAYMENT INFORMATION. THE FAILURE TO PROVIDE SUCH MAY RESULT IN NON-PAYMENT OF MONTHLY RENTAL CHARGES AND OTHER ACCRUED CHARGES, ALLOWING OPERATOR TO SELL CUSTOMER'S PERSONAL PROPERTY PURSUANT TO SECTION 22 BELOW. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO VERIFY THAT PAYMENTS ARE MADE AND BY WHAT METHOD PAYMENTS ARE MADE. CUSTOMER MAY CANCEL AUTOMATIC PAYMENTS AT WWW.EXTRASPACE.COM USING THE ACCOUNT MANAGEMENT TOOL BY LOGGING IN AND CLICKING "CANCEL AUTOPAY" OR IN PERSON AT THE FACILITY'S OFFICE.**

Customer Initials JC

6) Any checks returned for insufficient funds will result in a $25.00 service charge to Customer, and the returned check amount and service charge must be re-paid by cash, credit card, or money order. Customer shall not be permitted to pay with a check after two checks have been returned for insufficient funds. Operator may also, at its discretion, refuse to accept credit card payments if Customer's credit card charges have been disputed.

**ARBITRATION**

7) **Agreement to Arbitrate**: By initialing below, Customer agrees that, either Customer or Operator may elect to resolve any dispute by neutral, binding arbitration, on an individual basis only, and not by a court action, subject to the exceptions and terms set forth below. Customer acknowledges that he/she had the option of entering into an Agreement without an Arbitration provision, but voluntarily chose to enter into an Agreement with an Arbitration provision.

Except as provided below, Operator and Customer agree to arbitrate all Claims and Disputes between Operator and Customer.

"Claims" are any claims or controversies, at law or in equity, against each other related in any way to or arising out of in any way to this Rental Agreement, the Customer's use or occupancy of the Space and this Property or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation, even if it arises after the Agreement has terminated. "Claims" include, but are not limited to, claims related in any way to or arising out of in any way to any aspect of the relationship between Operator and Customer, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. "Claims" also include such claims that Customer brings against Operator's employees, agents, parents, subsidiaries, affiliates, or other representatives or that Operator brings against Customer.

"Disputes" include without limitation disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Unless Customer and Operator each agree otherwise, the Arbitration will be conducted by a single, neutral third party arbitrator. OPERATOR AND CUSTOMER WAIVE THEIR RIGHT TO TRIAL BY JURY OR IN A COURT. The party initiating the arbitration shall select the arbitration organization, subject to the other party's agreement to use such arbitration organization, which shall not unreasonably be withheld. Unless otherwise agreed, the arbitration shall take place within the County where the defendant/respondent resides. The applicable rules of the arbitration organization will govern the arbitration.

If the Claim does not qualify to be brought in small claims court, Operator will pay for the arbitration administrative or filing fees, including the arbitrator fees, up to an aggregate total of $2,500.

OPERATOR AND CUSTOMER AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OPERATOR AND CUSTOMER ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.

The right to arbitration under this Arbitration Provision is protected by, and any arbitration shall be governed by, the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The Operator and Customer agree that the Operator's business and the relationship here involve interstate commerce.

**Claims Not Subject to Arbitration**. Either Operator or Customer may bring Claims in small claims court. Either Operator or Customer may pursue the self-help and other remedies and defenses provided in Business and Professions Code section 21700 et seq. However, this exception does not include Claims that are derivative or based on violations of Business and Professions Code section 21700 et seq., including without limitation Claims for violation of Business and Professions code section 17200 et seq., conversion, negligence, breach of contract, or other violations of state or federal law; any such Claims shall be subject to arbitration under the terms of this Arbitration Provision unless brought in small claims court.

☑ Customer agrees to the Arbitration Provision — Customer Initials JC

☐ Customer refuses the Arbitration Provision

**ACCESS**

8) Customer shall have access to the Space and the Facility only during such hours and days as are regularly posted at the Facility, which are subject to change by Operator. Any access to the Facility outside of access hours is considered trespassing. If Monthly Rental Charges or other charges remain unpaid for five (5) days following the Monthly Due Date, unless otherwise prohibited by law, Operator may restrict or deny Customer's access

Exhibit A

to the Space and/or Facility. If Customer is renting more than one Space at any given time, default on one rented Space shall constitute default on all rented Spaces, entitling Operator to deny access to Customer on all rented Spaces.

9) Customer shall provide the lock for the rental Space sufficient to secure Customer's personal property unless a permanent lock is already installed on the unit. Operator does not represent the adequacy of any particular lock. Customer shall not provide Operator, Operator's agents, authorized representatives and employees (collectively "**Operator's Agents**") with a key or any kind of access code to Customer's Space.

10) Customer grants Operator and Operator's Agents or any governmental authority access to the Space: a) upon three (3) days prior written notice, b) upon default of the Agreement by Customer for thirty (30) days, c) in emergency circumstances (defined as imminent injury to persons or property), or d) as required by law. If Customer fails to grant access, Operator, Operator's Agents or the agents of any governmental authority shall have the right to remove Customer's lock and enter the Space to examine the contents, to make repairs or alterations, to take reasonable steps to preserve the Space, to comply with the law, or to enforce Operator's rights; including the right to relocate Customer's belongings if necessary. In the event that Operator must replace the lock, Operator may charge Customer for the lock.

11) Customer shall safeguard any property stored at the Facility. It is Customer's sole responsibility as to those persons who are given access to Customer's Space and Operator shall not be liable for anyone other than Customer entering the Space unless by Operator's gross negligence.

**LIMITATIONS ON USE OF THE SPACE AND FACILITY**

12) Customer shall not make or allow any alterations to the Space. Customer agrees that the Space and Facility shall be used solely for the storage of personal property. Customer shall not loiter about the Facility, spend excessive or unnecessary time in or around the Space or interfere with the use of the Facility by other customers of Operator. Customer shall not use the Space for any unlawful purpose and expressly agrees not to use the Space for human or animal habitation. Customer shall not store in the Space or at the Facility anything to which any other person or business has right, title, or interest. Customer represents and warrants that there are NO LIENS OTHER THAN OPERATOR'S LIEN UPON THE PROPERTY STORED. A Lienholders Addendum to this Agreement must be completed if there are any lienholders on any stored property and for each stored vehicle, absent which such vehicle will be deemed unauthorized and be subject to removal from the Space and Facility. The storage of food and any perishable goods is strictly prohibited. The use of electricity in the Space is strictly prohibited unless agreed upon in writing by Operator. **IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT CUSTOMER SHALL NOT STORE OR USE IN THE SPACE OR AT THE FACILITY ANY HAZARDOUS OR TOXIC MATERIALS OR ANY INHERENTLY DANGEROUS OR FLAMMABLE SUBSTANCE.** In the event that any food, hazardous substances, or toxic materials are found in the Space, Operator has the right to dispose of such items without any notice to Customer.

13) Customer agrees that the Space is not appropriate for the storage of jewels, furs, heirlooms, art works, collectibles or other irreplaceable items having special sentimental or emotional value to Customer and Customer agrees not to store said items. Customer hereby waives any claim for sentimental or emotional value for Customer's property that is stored in the Space or at the Facility.

14) If the Space is so equipped, Customer is prohibited from storing any items within 18" of the clearance to the fire sprinkler head diffuser for life safety reasons. Customer acknowledges that any items stored within 18" of the clearance of the fire sprinkler head diffuser may be removed by Operator and placed in a separate space without notice to Customer, all at Customer's expense.

**LIMITATION OF OPERATOR'S LIABILITY AND INDEMNITY**

15) **OPERATOR IS NOT A WAREHOUSEMAN ENGAGED IN THE BUSINESS OF STORING GOODS FOR HIRE, AND NO BAILMENT IS CREATED BY THIS AGREEMENT. OPERATOR EXERCISES NEITHER CARE, CUSTODY, NOR CONTROL OVER CUSTOMER'S STORED PROPERTY AND ALL PROPERTY STORED WITHIN THE SPACE OR AT THE FACILITY BY CUSTOMER SHALL BE STORED AT CUSTOMER'S SOLE RISK.**

16) Operator, Operator's Agents, Operator's affiliates and the Facility's owner, if different, shall not be liable to Customer for any damage or loss to any person or property at the Facility and to any property stored in the Space, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, mold, mildew, water, rain, rodents, insects, acts of God, partial or sole negligence or failure to act of Operator or Operator's Agents, except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law. Customer shall indemnify and hold Operator, Operator's Agents, Operator's affiliates and the Facility's owner, if different, harmless from any and all damage, loss, or expense arising out of or in connection with any damage to any person or property, occurring in the Space or at the Facility arising in any way out of Customer's use of the Facility, even if such damage or loss is caused entirely or in part by the negligence of Operator, Operator's Agents, Operator's affiliates or the Facility's owner, if different. Operator, Operator's agents, Operator's affiliates and the Facility's owner, if different, shall not be liable whatsoever to any extent to Customer or Customer's invitees, family, employees, agents or servants for any personal injury or death arising from Customer's use of the Space or Facility from any cause whatsoever including, but not limited to, the active or passive acts, omissions or negligence of Operator or Operator's Agents.

17) Climate controlled spaces are heated and cooled depending on outside temperature. These spaces do not provide constant internal temperature or humidity control. Operator does not warrant or guarantee temperature or humidity ranges in the Space due to changes in outside temperature and humidity, or due to other considerations, and Customer understands and assumes the risk of climate controlled spaces not meeting certain temperature and humidity requirements.

18) **Customer agrees that the total value of the property stored shall not exceed $5,000 unless Operator has agreed in writing for Customer to store property exceeding $5,000; provided that Customer agrees that Operator's maximum liability to Customer for any claim or suit by Customer, including but not limited to any suit alleging wrongful foreclosure or sale of Customer's property is $5,000. This section shall not create any liability on the part of Operator to Customer for any loss or damage to Customer's property, regardless of cause.**

19) No promises or representations of safety or security have been made to Customer by Operator or Operator's Agents. Operator makes no representation that video surveillance is present at any location or in any portion of a Facility and video surveillance equipment may be changed or removed at any time by Operator. There shall be no liability to Operator, Operator's Agents, Operator's affiliates or the Facility's owner, if different, in the event alarm, video system or sprinkler system, or any components thereof, shall fail or malfunction. **Video recording devices are not monitored.**

20) Operator's Agents are not authorized or permitted to make any warranties about the Space or the Facility. Operator's Agents' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES and shall not be relied upon by Customer. The entire agreement and understanding of the parties hereto are embodied in this writing and NO OTHER WARRANTIES are given.

**INSURANCE**

21) **Customer shall maintain comprehensive insurance coverage of at least 100% of the actual cash value of all personal property stored in the Space against damage by water, fire, extended coverage perils, vandalism and burglary. To the extent Customer does not maintain insurance for the full value of the personal property stored, or fails to maintain insurance at all, Customer bears all risk of loss or damage.** Customer hereby releases Operator, Operator's Agents, Operator's affiliates and the Facility's owner, if different, from any and all claims for damage or loss to personal property that are caused by or result from perils that are, or would be, covered under the required insurance policy and hereby waives any and all rights of recovery against Operator, Operator's Agents, Operator's affiliates and the Facility's owner, if different, in connection with

any damage which is or would be covered by any such insurance policy. **CUSTOMER'S PERSONAL PROPERTY STORED IN THE SPACE OR AT THE FACILITY IS NOT INSURED BY OPERATOR AGAINST LOSS OR DAMAGE.**

**OPERATOR'S LIEN AND RIGHT TO ENFORCE UPON NONPAYMENT**

22) **CUSTOMER ACKNOWLEDGES AND AGREES THAT CUSTOMER'S PERSONAL PROPERTY STORED AT THE FACILITY WILL BE SUBJECT TO A CLAIM OF LIEN IN FAVOR OF OPERATOR FROM THE DATE THE MONTHLY RENTAL CHARGE AND OTHER CHARGES ARE DUE AND UNPAID, AND FOR EXPENSES REASONABLY INCURRED IN THE SALE OR DISPOSITION OF CUSTOMER'S STORED PERSONAL PROPERTY. OPERATOR MAY SELL CUSTOMER'S PERSONAL PROPERTY IN A COMMERCIALLY REASONABLE MANNER AFTER GIVING CUSTOMER REASONABLE NOTICE, IN ORDER TO SATISFY SUCH LIEN. CUSTOMER AGREES THAT ANY SPACE ADVERTISED AND SOLD USING AN ONLINE AUCTION PROVIDER IS DEEMED TO BE SOLD IN A COMMERCIALLY REASONABLE MANNER.** Operator may enforce Operator's Lien by selling Customer's stored personal property at public sale, in accordance with the provisions of applicable law, and apply the net proceeds from such sale to the payment of all sums due to Operator. This remedy is cumulative with and in addition to every other remedy given hereunder or hereafter existing at law or in equity. It is further understood that the date of sale of Customer's property pursuant to this section, if applicable, shall constitute the date of termination of this Agreement. In the event of a foreclosure of Customer's interest in the Space, it is understood and agreed that the liability of Customer for the rents, charges, costs and expenses provided for in this Agreement shall not be relinquished, diminished or extinguished prior to payment in full. Operator may use a collection agency to secure any remaining balance owed by Customer after the application of sale proceeds, if any. If any property remains unsold after foreclosure and sale, Operator may dispose of said property in any manner considered appropriate by Operator in its sole discretion.

23) Any time prior to lien sale, any person claiming a right to Customer's liened property may stop the sale by **paying in full in the form of CASH ONLY** all amounts owed. Upon release of such property to the payor, Operator shall have no further liability to any person for the liened property.

24) In addition to any other requirements of applicable law, Operator may post information relating to any public sale resulting from Operator's enforcement of its lien at the following website: http://auctions.extraspace.com.

**EVENT OF DEFAULT**

25) If Customer shall fail or refuse to perform any of the covenants, conditions or terms of this Agreement, or in the event Customer files a voluntary petition in Bankruptcy or suffers a petition in involuntary bankruptcy to be filed against him/her, Customer shall be deemed in default in the performance of this Agreement, except as limited by law. Nothing contained in this Agreement shall be construed as limiting Operator's rights and remedies as provided under the laws of the state where the Facility is located. In the event of a default, and without prejudice to any other remedies, Operator may (a) terminate this Agreement, or (b) seize and sell the personal property pursuant to Section 22 above.

**TERMINATION OF THE AGREEMENT AND VACATING THE SPACE**

26) Customer must provide Operator notice prior to vacating the Space and terminating this Agreement. Operator shall not be required under any circumstance to refund Customer's first month's rent or other charges paid at the time of execution of this Agreement. In addition, Operator shall not be required to prorate Monthly Rental Charges if Customer gives notice of termination to Operator and the termination date occurs during a Rental Month for which Customer already paid the Monthly Rental Charge. However, if Customer's notice of termination includes a date of termination that is to occur during a future Rental Month, Operator shall prorate the Monthly Rental Charge for the Rental Month wherein termination occurs. Furthermore, Customer shall be entitled to a refund of any prepaid Rental Month Charges so long as Customer has not occupied the Space for any portion of the prepaid Rental Month at the time of termination.
Customer agrees to the refund policy outlined above. Customer Initials gC

27) If Customer is in default under this Agreement, or for any other reason in Operator's sole discretion, Operator may terminate this Agreement by giving Customer fifteen (15) days written notice.

28) If Customer or Operator terminates this Agreement as provided above, Customer agrees to move out and completely vacate the Space on or prior to the anticipated termination date. Customer shall leave the Space in the same condition as delivered to Customer. Any property left behind will be considered abandoned property and Operator may dispose of such in a manner that Operator sees fit. If Operator is forced to dispose of any abandoned property or forced to clean the Space, Operator may charge Customer a reasonable cleaning fee, which shall be an amount no less than $50.00. Upon Customer's notice of termination, Operator may consider this Agreement terminated and may relet the Space anytime after the notification date provided. Customer shall be deemed to have conclusively abandoned all property which remains in the Space or on the Facility after the termination of this Agreement, upon default of this Agreement for thirty (30) days, or when Operator concludes based upon other reasonable considerations, including, but not limited to an unlocked Space, that Customer has abandoned Customer's property and the Space.

**AMENDING THE AGREEMENT**

29) All terms in this Agreement are **SUBJECT TO CHANGE** upon thirty (30) days written notice to Customer, including but not limited to, and without limitation, Monthly Rental Charges, late fees and other charges. Upon receiving notice of Operator's pending change(s) to this Agreement, Customer may terminate this Agreement on or before the effective date of such change by giving Operator written notice within ten (10) days of the change taking effect. If Customer does not give such notice of termination, the change shall become effective on the date stated in Operator's notice and shall thereafter apply to the occupancy hereunder, whether or not Customer has agreed to the change in writing.

**NOTICE**

30) Customer shall notify Operator of any change in Customer's address or phone number within ten (10) days of the change. Such notifications shall be (a) by certified mail, return receipt requested, postage prepaid, (b) delivered in person at the Facility's rental office (c) sent from customer via e-mail so long as the change of address request originates from the e-mail address Operator has on file for Customer, including the e-mail address provided in this Agreement if applicable, or (d) made at www.extraspace.com via online account management. Failure by Customer to notify Operator shall constitute a waiver by Customer of any defense based on failure to receive any notice.

31) Customer recognizes it is entering into a business relationship with Operator and to the fullest extent permitted by law, expressly consents to Operator contacting Customer via phone, e-mail or text messaging for purposes relevant to Customer's account or services related to Operator's business. Customer should review Customer's phone/text plan with its servicer to see if text message fees or data service rates apply and Customer agrees to accept such charges if applicable. Except as otherwise required by law, or as otherwise provided for in this Agreement, written notices or demands may be personally served by e-mail to the e-mail address provided by Customer in this Agreement (or updated e-mail address per separate notification as applicable) or by pre-paid first class U.S. Mail to the last known address of the party to be served, as contained in this Agreement. Such notice or demand shall be complete at on the date sent to Customer's e-mail address listed on this Agreement (or updated e-mail address per separate notification as applicable), if personally delivered (including e-mail), or on the date of pre-paid, properly addressed deposit with the U.S. Postal Service.

Exhibit A, 1

**MISCELLANEOUS**

32) Customer shall not assign, sublease or jointly occupy the Space or any portion thereof without in each instance obtaining the prior written consent of Operator.
33) All of the provisions of this Agreement shall be binding upon the heirs, executors, administrators, representatives, successors and assignees of the parties hereto.
34) Operator and Customer hereby waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross complaint, at law or in equity brought by either Operator against Customer or Customer against Operator arising out of or in any way connected with this Agreement, Customer's use or occupancy of the Space and the Facility or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation. Operator and Customer agree that no arbitration, small claims court proceeding or any other action or proceeding shall be brought against Operator or Customer more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises or whether based on tort, contract or any other legal theory.
35) If Customer is not an individual, the undersigned warrants that he or she is an authorized agent of Customer.
36) If Customer or Customer's spouse is in the military service, Customer must fill out the Addendum to this Agreement regarding military. If Customer's military status (or Customer's spouse's military status) changes during the term of this Agreement, Customer must provide written notice to Operator. Operator will rely on this information to determine the applicability of the Servicemembers Civil Relief Act.
37) Customer represents and warrants to Operator that Customer is not a party with whom Operator is prohibited from doing business pursuant to the regulations of the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, including those parties named on OFAC's Specially Designated Nationals and Blocked Persons List. Customer is currently in compliance with, and shall at all times during the Agreement term remain in compliance with, the regulations of OFAC and any other governmental requirement relating thereto. In the event of any violation of this section, Operator shall be entitled to immediately terminate this Agreement and take such other actions as are permitted or required to be taken under law or in equity. CUSTOMER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS OPERATOR FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, LOSSES, RISKS, LIABILITIES AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COSTS) INCURRED BY OPERATOR ARISING FROM OR RELATED TO ANY BREACH OF THE FOREGOING CERTIFICATIONS. These indemnity obligations shall survive the expiration or earlier termination of this Agreement.
38) This Agreement contains the entire agreement of the parties and no representation or agreements, oral, or otherwise, between Operator and Customer not embodied herein shall be of any force or effect (except for written addenda agreed to between the parties).
39) As part of your agreement to rent, you may have received an initial rental discount. Your monthly rental charge is $24.00 as compared to the suggested rental rate of $67.00 for your storage unit.

Operator and Customer hereby execute this Agreement to be effective on the Rental Agreement Date listed above.

Yasmine Jones

OPERATOR

Julie Carter

CUSTOMER

Exhibit A1

# CUSTOMER PROTECTION PLAN
## THE SMART WAY TO INSURE VALUABLES

**Ensure your peace of mind. Insure your valuables.**
When it comes to putting your important belongings in storage, some things are out of your control—like flood, fire, windstorms and vandalism. Homeowner's or renter's insurance policies may provide insurance coverage for property in a storage space, but it might not be enough. With the Customer Protection Plan, you have the insurance you need to store your valuables with confidence and peace of mind.

**Easy and affordable.**
The Customer Protection Plan* features affordable rates and no deductible. It is a primary pay policy, meaning this coverage may work with a homeowner's policy that has a high deductible, possibly eliminating out of pocket expenses for a covered loss. When the time comes to make a claim, you'll have the help of a customer service professional. In addition to covering many losses, the Customer Protection Plan also includes In-Transit Protection providing coverage for some mishaps while you move your items from home to storage. If you have questions about which items are covered, consult your policy certificate of insurance for details.

**Important information for our customers.**
Your self-storage facility is not responsible for any damage or loss to the property you store. All customers are required by the rental agreement to insure property stored at this facility. Contact your insurance agent to find out if your property stored at this location could have duplicate coverage under an existing policy. The insurance company may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which could then benefit from your purchase of this insurance. To review a Customer Protection Plan, call Beecher Carlson Insurance Services LLC at 1-800-423-6071 or email at ESSCPP@beechercarlson.com

**Comprehensive water damage protection.**
Almost all standard homeowner's, renter's and storage insurance policies do not cover water that rises from the ground, like that from a flood or major thunderstorm, water main breaks or spills from an adjacent unit.

At Extra Space, Flood Protection is included with each standard policy.

**Pest protection.**
Most homeowner's, renter's, and other storage insurance products do not cover rodent, insect, or vermin damage up to policy limits. The Customer Protection Plan offers this coverage for you - just another way to help bring you peace of mind (some exclusions apply). We help take the worry away.

**Insurance Rates**

| STANDARD POLICY RATES | |
|---|---|
| *Limits* | *Premium Rates*** |
| $2,000 | $11.00 |
| $3,000 | $16.50 |
| $5,000 | $26.00 |
| $10,000 | $47.00 |

---

** Underwritten by companies of IAT Insurance Group*

*** Monthly premium includes premium taxes*

AS5

Exhibit A1

**Filing a claim is simple.**

Step 1: Contact your storage Site Manager as soon as your loss is discovered.

Step 2: Contact a trained customer service representative at Beecher Carlson Insurance Services LLC at 1-800-423-6071; or at esclaims@ACMclaims.com; or at https://www.acmclaims.com/secureforms2/claim/extraspace

Step 3: Protect your items from further damage. Do not throw out or remove the damaged property until you have reported the incident and spoken with a Beecher claims adjuster. If possible, take photos or video.

**Time is valuable. Don't wait.**
The unexpected can happen in an instant; but with the Customer Protection Plan, you can be ready. Call today to give your valuables the insurance protection they deserve.

**Beecher Carlson Insurance Services LLC**

| | |
|---|---|
| Toll-free: | 1-800-423-6071 |
| Insurance Questions: | ESSCPP@beechercarlson.com |
| Claim Questions: | esclaims@ACMclaims.com |
| 24/7 claim reporting: | 1-800-423-6071 |
| Adjusters are available | Mon – Fri: 10 a.m. – 8 p.m., EST |

The purchase of insurance through the Customer Protection Plan is not required to lease a rental space.
*Most items in securely locked storage spaces are covered by the Customer Protection Plan and any purchased rider(s). The items not covered include, but are not limited to: deeds, legal documents, money, jewelry, watches, and furs, as well as any item(s) that are kept outside of a securely locked storage unit. Burglary is a covered risk when it's the result of forced entry into a securely locked storage space. Any unearned premium will be returned to insured if policy is cancelled. This brochure is a summary of coverage only and is not a policy or a certificate of insurance. Please refer to the Certificate of Insurance itself for coverage terms, conditions, and exclusions, which apply in the event of loss.*

*This plan is available to customers of:*

**Extra Space Storage**

You deserve Extra Space.

888-STORAGE

www.extraspace.com

©2017 Extra Space Storage LLC

Exhibit A

**APPLICATION FOR ACCEPTANCE OR REJECTION OF INSURANCE (MASTER POLICY: IM00002000)**

Space No.: 1327 Facility: **Extra Space Storage -** 1583 - Chesapeake - Woodlake Dr

**I UNDERSTAND THAT MY PROPERTY IS STORED AT MY SOLE RISK AND THAT I HAVE AGREED TO INSURE MY PERSONAL PROPERTY FOR ITS FULL VALUE AGAINST ALL RISKS**

I also understand that the owner, landlord, lessor or operator of this storage facility:
1) Is a commercial landlord renting storage space, is not a warehouseman, and does not take custody of my property.
2) Is not responsible for any loss to my property.
3) Does not provide insurance on my property for me.

**MY CHOICE OF INSURANCE OPTIONS:**

- **Obtain from my own insurance agent**
  Your existing home or business insurance policy might provide similar coverage. We are not qualified to evaluate your policy - an insurance agent will need to provide this service.

- **Obtain insurance available through Beecher Carlson Insurance Services LLC from Occidental Fire & Casualty Company of North Carolina.**

I understand and agree that under the options below, to the extent I do not purchase insurance, insurance lapses or do not fully insure my goods, I personally assume all risk of loss of the property in my storage space.

| INITIAL | Monthly Premium | Coverage Election: $2,000 Base with Flood and Pest |
|---|---|---|
| JC 1503474842 | $11.00 | Added Coverage Riders: Flood $0.00; Earthquake $0.00 |

If Occupant's insurance election is to purchase insurance available through Occidental Fire & Casualty Company of North Carolina, then Occupant also acknowledges the following.

I understand the amount noted is the amount I must pay for the insurance I have selected and is due no later than the date on which my monthly rent is due. This is a maximum coverage limit. The actual amount paid in the event of loss will be determined by proof of loss documentation. I authorize the owner, landlord, lessor or operator of this storage facility to receive the premium and to send it to the insurance company on my behalf.

I hereby apply to Occidental Fire & Casualty Company of North Carolina for insurance in the amount initialed above. I have voluntarily elected to purchase this insurance. I have read and completed this application for insurance provided in the policy underwritten by Occidental Fire & Casualty Company of North Carolina. Occidental Fire & Casualty Company of North Carolina may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which would then receive information about your insurance, and could then benefit from your purchase of this insurance.

**APPLICATION PAGE**: When I have properly completed, signed this application, made the first payment of premium and received a Certificate of Storage Insurance and my coverage will be effective as of the date I signed this page, for the amount of insurance I have selected and initialed above.

I understand my insurance will continue on a month-to-month basis as long as I continue to pay the premium noted above. Failure to pay any premium in full will result in the cancellation, without notice, of my insurance.

**ELIGIBILITY**: I understand that the opportunity to purchase insurance on property stored within the building is available to all Tenants/Occupants who have entered into a Rental Agreement with the owner, landlord, lessor or operator for enclosed storage space. Coverage does not apply to property stored in a commercial office suite, retail space, parking space, other open storage areas or any other location.

**POLICY CHANGES**: I understand that I will receive one month's notice of changes to the policy and/or premium rates, and the policy and/or new rate shall be effective on the 1st of the month following the month in which advance notice of such change is provided.

**INSURANCE INFORMATION**: I have received a copy of the Customer Insurance Program Brochure and Certificate of Customer Storage Insurance. If I should need any additional information regarding this program I can call or write Beecher Carlson Insurance Services LLC at the phone number or address listed below. **For the purpose of identification and reference, the printed number of the Rental Agreement is deemed to be the certificate number assigned to the Customer Protection Plan Certificate. Beecher Carlson Insurance Services LLC is an independent licensed insurance broker which represents Occidental Fire & Casualty Company of North Carolina.**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

AMERICAN CLAIMS MANAGEMENT
P.O. Box 9033
Carlsbad, CA 92018
800-423-6071
Monday through Friday
10:00am to 8:00pm (Eastern Time)

**Manager of this facility is NOT an insurance agent. Please do not direct questions regarding insurance to them. Call 800.423.6071**

Tenant/Occupant Signature: Julie Carter Date: Feb 13, 2021

Tenant/Occupant Name: Julie Carter

Exhibit A

# CERTIFICATE OF STORAGE INSURANCE

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA**
**CUSTOMER PROTECTION PLAN UNDER MASTER POLICY NUMBER: IM00002000**

This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by Occidental Fire & Casualty Company of North Carolina

**DEFINITIONS:**
When used in reference to this insurance, "you" and "your" refer to the person(s) named as tenant in the Rental Agreement. "We," "us" and "our" refer to the insurance company. In addition, certain words and phrases are defined as follows:
**OWNER** – shall mean the owner, landlord, lessor or operator of the self storage facility.
**RENTAL AGREEMENT** – means the Rental Agreement executed and in effect between you and the "owner".
**INSURANCE APPLICATION** – means the "Application For or Rejection of Insurance under the Customer Protection Plan" form you completed.
**AMOUNT OF INSURANCE** – means the amount of insurance that you designated by your initials in the application for coverage.
**PREMIUM** – means the amount shown in the insurance application as premium for your insurance.

**INSURING AGREEMENT:** We will provide insurance under The Master Policy in consideration of your payment of the premium shown in the Insurance Application.
**EFFECTIVE DATE:** This insurance attaches on the date shown in the Rental Agreement. This insurance shall remain in effect until terminated or cancelled as provided by this certificate.
**PROPERTY INSURED:** We cover your personal property or the personal property of others for which you may be liable or have assumed liability prior to a loss: 1) while in storage within the enclosed storage space described in the Rental Agreement; or 2) while stored in a securely enclosed and locked vehicle or trailer and parked in a designated parking space. Vehicle, trailer and parking space are as described in the Rental Agreement. Vehicle or trailer will not be covered for any type of loss or damage, this coverage applies only to personal property securely stored inside a vehicle or trailer.

**PERILS INSURED AGAINST:** We cover direct loss to property insured by the following perils, except as otherwise excluded but limited to the amount of insurance.
a) Fire or Lightning
b) Windstorm or Hail
c) Explosion or Sonic Boom
d) Strikes, Riot or Civil Commotion
e) Aircraft, Self-propelled Missiles or Spacecraft
f) Vehicles
g) Smoke
h) Landslide, including sink hole collapse
i) Vandalism or Malicious Mischief
j) Falling objects, provided the exterior of the building containing the property is first damaged by such falling objects
k) Weight of Ice, Snow or Sleet
l) Collapse of Buildings containing the property insured, other than by earthquake
m) Water Damage except as excluded under Paragraphs (b) and (c) "Exclusions"
n) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not

**ADDITIONAL COVERAGES:** We will also provide these additional coverages up to the amounts stated below. These additional coverages do not increase the Amount of Insurance.
**BURGLARY:** 100% of the amount of insurance for each insured loss by burglary or holdup. The term Burglary shall mean the act of stealing property by forcible entry into the storage space described in the Rental Agreement; however, this coverage only applies when such storage space is securely locked at the time of the forcible entry.
**DEBRIS REMOVAL:** 20% of the amount of your insurance under the Master Policy to cover the necessary expense incurred in the removal of debris from the property insured following an insured loss.
**TRANSIT:** 100% of the amount of your insurance under the Master Policy for loss by fire or by the collision or overturn of a motor vehicle or trailer upon which covered property is being transported while such property is in transit to or from the storage space, provided the property is within 50 miles of the described storage facility. There is no coverage for damage to a motor vehicle or trailer in transit.
**EXTRA RENTAL SPACE:** 20% of the amount of your insurance under the Master Policy to cover the extra expense necessarily incurred by you for the rental of substitute storage when occupancy of the described storage space is prevented as a result of loss or damage to storage facility building by a peril insured against in this policy.
**VERMIN (RODENTS AND INSECT PESTS):** 100% of the amount of insurance for each insured loss by damage from vermin. This additional coverage only applies when no food or food residue is stored within the storage unit or if the vermin are not brought in to the storage unit by the storage unit tenant.

**EXCLUSIONS:** We do not insure:
a) Accounts, bills, currency, deeds, evidence of debt, evidence of ownership, contracts and titles, securities, negotiable instruments, money, lottery tickets, notes, animals, jewelry, watches, precious or semi-precious stones, furs, or garments trimmed with fur, breakage of glass or similar fragile articles, illegal drugs, food, alcohol and explosives.
b) Against loss or damage caused by or resulting from wear and tear, gradual deterioration, maintenance, inherent vice, latent defect, vermin (moths, insects, rodents), mold, mildew, wet or dry rot, atmospheric condition and /or changes in temperature, delay, loss of use or loss of market. Exclusion for vermin applies only if food or food residue was stored in storage unit or if tenant brought vermin on to the insured premises.
c) Against loss or damage caused by, resulting from, contributing to or aggravated by earthquake, unless fire or explosion ensues, and then we will pay only for the ensuing loss.
d) Loss or damage caused by cigarettes or other smoking materials, unless fire ensues.
e) Loss or damage caused by the neglect of the Insured to use all reasonable means to save and preserve the insured property at and after the occurrence of any peril insured against, or when the insured property is endangered by an insured peril.
f) Loss or damage caused intentionally by the Insured or at the direction of the Insured.
g) Loss or damage of contraband, or caused by illegal transportation or trade.
h) Loss or damage resulting from activity in violation of the Lease Agreement.
i) Loss or damage caused by theft or mysterious disappearance. except burglary as covered herein.
j) Losses caused by nuclear hazards:
"Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled of however caused or any consequence of any of them. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the "Perils Insured Against" clause.
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered
k) War risk and governmental action:
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by or due to any act or condition incident to the following:

Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual , impending or expected attack,
By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
By military, naval or air forces or
By an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces.
Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence, and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

Exhibit A1

**TERMINATION OF INSURANCE:** This insurance shall automatically terminate without notice to you:
On the date your Rental Agreement is terminated;
On the first day you fail to pay the premium in full for this insurance by the monthly anniversary day, or
As provided in the Cancellation clause shown below.

**VALUATION:** The value of the property will be determined at the time of loss and will be the least of the following amounts:
The actual cash value of that property;
The cost of reasonably restoring that property to the condition immediately before loss; or
The cost of replacing that property of like kind and quality.

**OTHER INSURANCE:** If a loss is also covered by other insurance, we will pay only the proportion of the loss that this amount of insurance bears to the total amount of insurance covering the loss.

**DUTIES YOU HAVE AFTER A LOSS:** You will give prompt notice to Owner at site location and to our authorized representative, listed below, and in case of Burglary also to the police. The notice should include:
How, when and where the loss occurred;
The property involved and your interest in it; and
The names and addresses of any witnesses.

| | | | |
|---|---|---|---|
| | IF YOU HAVE A LOSS: | Beecher Carlson Insurance Services LLC | Phone # 800 – 423 - 6071 |
| | Telephone, write or fax: | AMERICAN CLAIMS MANAGEMENT | (New claim reporting 24/7) |
| Or email to: | esclaims@ACMclaims.com | 8390 E. Crescent Parkway, Suite 200 | (Adjusters are available from 10:00 |
| or on-line at: | https://www.acmclaims.com/secureforms2/claim/extraspace | Greenwood Village, CO 80111 | AM to 8:00 PM EST) |

**CONCEALMENT, MISREPRESENTATION AND FRAUD:** If you commit fraud by intentionally concealing or misrepresenting a material fact concerning
The insurance evidenced by this Certificate,
Covered property or
Your interest in the covered property
You will void your insurance under this policy and be subject to prosecution.

**EXAMINATION UNDER OATH:** Before recovering for any loss, if requested, you:
Will permit us to inspect the damaged property before it is disposed of or repaired;
Will send us a sworn statement of loss containing the information we request to settle your claim within 60 days of our request;
Will agree to examinations under oath at our request;
Will produce others for examination under oath at our request;
Will provide us with all pertinent records needed to prove the loss; and
Will cooperate with us in the investigation or settlement of the loss

**APPRAISAL:** If you and we do not agree as to the amount of loss, then you and we will select a competent appraiser upon receiving a written request from the other. The appraisers will select an umpire. If they do not agree on an umpire, the appraisers will ask a judge of a court of record of the state in which the appraisal is pending to make the selection. The written agreement of any two will be binding and set the amount of loss. You will pay the expense of your appraiser and we will pay for ours. You and we will share equally the expense of the umpire and the other expenses of the appraisal.

**LOSS PAYMENT/OTHER RECOVERIES:** We will pay or make good any insured loss under the insurance evidenced by this certificate within 30 days after we reach agreement with you, the entry of final judgment or the filing an arbitration award, whichever is earlier. We will not be liable for any part of a loss which has been paid or made good by others.

**LEGAL ACTION AGAINST US:** No one may bring legal action against us unless:
There has been full compliance with all terms of the insurance evidenced by this certificate; and
Such action is brought within two years after you first have knowledge of a loss.

**TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS TO US:** If any person or organization to or from whom we make payment under the insurance evidenced by this certificate has a right to recover damages from another, that right must be transferred to us. That person or organization must do everything necessary to assist us, and must do nothing after the loss to hinder us in our recovery.

**PAIR, SET OR PARTS:**
Pair or Set. In case of loss to any part of a pair or set we may:
Repair or replace any part to restore the pair or set to its valuation before the loss; or
Pay the difference between the valuation of the pair or set before and after the loss.
Parts. In case of loss to any part of covered property, consisting of several parts when complete, we will pay only for the valuation of the lost or damaged part.

**OPTIONAL ARBITRATION:** Except for decisions made under the appraisal condition, in the event you and we fail to agree as to the interpretation or applicability of any of the terms of our Insurance, you may elect to resolve the disagreement by binding arbitration in accordance with the statutory rules and procedures of the state in which the property is located or in accordance with the Commercial Arbitration Rules of the American Arbitration Association. This option is granted to you subject to the following terms and conditions:
Any arbitration instituted to determine coverage for a specific loss must be started within one year after the occurrence causing loss or damage.
This optional arbitration clause is intended to grant an additional right to you. All other terms and conditions of this contract remain the same, and no rights or duties of yours or ours shall be diminished or negated by reason of this clause or exercise of this option.

**CANCELLATION:** The insurance evidenced by this Certificate may be canceled at any time by you, upon providing advanced notice in writing to us or Beecher Carlson Insurance Services LLC. Beecher Carlson will send notice to your address shown on the Rental Agreement prior to the effective date of cancellation of this certificate. The insurance evidenced by this policy shall automatically terminate in event of non-payment or partial payment of premium as provided above without further notice to you. Premium for the month of cancellation is fully earned and there shall be no return premium due you for such month. If any part of this paragraph is in conflict with specific state requirements the state requirements will apply.

**CHANGES:** This Certificate and the Master Policy contains agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of The Master Policy.

Exhibit A2

# Electronic Record of Contracts

This document was generated as a record of certain contracts created, accepted and stored electronically.

## Summary of Contracts

This document contains the following contracts.

| Title | Version | ID |
|---|---|---|
| **Insurance Application** | 12.0 | 6489ece14e4b4da76033cbe7 |
| **Lease Agreement** | 12.0 | 64a838b32190b4185c333864 |
| **CPP - COI Base** | 6.0 | 64ee54f01f58558ce5ee3e57 |

Exhibit A2

## Contract details:

| Title | Version | ID |
|---|---|---|
| **Insurance Application** | 12.0 | 6489ece14e4b4da76033cbe7 |

## Contract accepted by:

**Julie Locanas**

**Signer ID:** 1507255365
**Email:** juloc21@gmail.com

Date / Time: Aug 30, 2023 at 2:36 PM EDT
IP Address: 174.206.98.109

Metadata provided with the acceptance:

| | |
|---|---|
| [illegible] | 1507255365 |
| [illegible] | 2003016311 |
| [illegible] | 54976650 |
| [illegible] | juloc21@gmail.com |
| [illegible] | Julie Locanas |

## APPLICATION FOR ACCEPTANCE OR REJECTION OF INSURANCE (MASTER POLICY: IM00002000)

Space No.:_____1350 __________ Facility: _1583 - Chesapeake - Woodlake Dr

**I UNDERSTAND THAT MY PROPERTY IS STORED AT MY SOLE RISK AND THAT I HAVE AGREED TO INSURE MY PERSONAL PROPERTY FOR ITS FULL VALUE AGAINST ALL RISKS**

I also understand that the owner, landlord, lessor or operator of this storage facility:

1) Is a commercial landlord renting storage space, is not a warehouseman, and does not take custody of my property.

2) Is not responsible for any loss to my property.

3) Does not provide insurance on my property for me.

**MY CHOICE OF INSURANCE OPTIONS:**

- Obtain from my own insurance agent
  Your existing home or business insurance policy might provide similar coverage. We are not qualified to evaluate your policy - an insurance agent will need to provide this service.
- Obtain insurance available through Beecher Carlson Insurance Services LLC from Occidental Fire & Casualty Company of North Carolina.

I understand and agree that under the options below, to the extent I do not purchase insurance, insurance lapses or do not fully insure my goods, I personally assume all risk of loss of the property in my storage space.

| Customer Initials: __JL<br>Electronically Signed On:<br>__8/30/2023 2:36 PM EDT | **Monthly Premium**<br>$11.00 | **Coverage Election:** $2,000 Base with Flood and Pest |
|---|---|---|

If Occupant's insurance election is to purchase insurance available through Occidental Fire & Casualty Company of North Carolina, then Occupant also acknowledges the following.

I understand the amount noted is the amount I must pay for the insurance I have selected and is due no later than the date on which my monthly rent is due. This is a maximum coverage limit. The actual amount paid in the event of loss will be determined by proof of loss documentation. I authorize the owner, landlord, lessor or operator of this storage facility to receive the premium and to send it to the insurance company on my behalf.

I hereby apply to Occidental Fire & Casualty Company of North Carolina for insurance in the amount initialed above. I have voluntarily elected to purchase this insurance. I have read and completed this application for insurance provided in the policy underwritten by Occidental Fire & Casualty Company of North Carolina. Occidental Fire & Casualty Company of North Carolina may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which would then receive information about your insurance, and could then benefit from your purchase of this insurance.

**APPLICATION PAGE**: When I have properly completed, signed this application, made the first payment of premium and received a Certificate of Storage Insurance and my coverage will be effective as of the date I signed this page, for the amount of insurance I have selected and initialed above.

I understand my insurance will continue on a month-to-month basis as long as I continue to pay the premium noted above. Failure to pay any premium in full will result in the cancellation, without notice, of my insurance.

**ELIGIBILITY**: I understand that the opportunity to purchase insurance on property stored within the building is available to all Tenants/Occupants who have entered into a Rental Agreement with the owner, landlord, lessor or operator for enclosed storage space. Coverage does not apply to property stored in a commercial office suite, retail space, parking space, other open storage areas or any other location.

**POLICY CHANGES**: I understand that I will receive one month's notice of changes to the policy and/or premium rates, and the policy and/or new rate shall be effective on the 1st of the month following the month in which advance notice of such change is provided.

Exhibit A 2

**INSURANCE INFORMATION**: I have received a copy of the Customer Insurance Program Brochure and Certificate of Customer Storage Insurance. If I should need any additional information regarding this program I can call or write Beecher Carlson Insurance Services LLC at the phone number or address listed below. **For the purpose of identification and reference, the printed number of the Rental Agreement is deemed to be the certificate number assigned to the Customer Protection Plan Certificate. Beecher Carlson Insurance Services LLC is an independent licensed insurance broker which represents Occidental Fire & Casualty Company of North Carolina.**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

Beecher Carlson Insurance Services
A Brown & Brown Company
Six Concourse Parkway
Suite 2300
Atlanta, GA 30328

**Manager of this facility is NOT an insurance agent. Please do not direct questions regarding insurance to them. Contact Beecher Carlson at cpp@bbrown.com.**

Tenant/Occupant Signature: Julie Locanas
Electronically Signed On: 8/30/2023 2:36 PM EDT

CPP - Application Base 20230614

Exhibit A2

## Contract details:

| Title | Version | ID |
|---|---|---|
| **Lease Agreement** | 12.0 | 64a838b32190b4185c333864 |

## Contract accepted by:

| | | |
|---|---|---|
| **Julie Locanas** | **Signer ID:** | 1507255365 |
| | **Email:** | juloc21@gmail.com |

Date / Time: Aug 30, 2023 at 2:36 PM EDT

IP Address: 174.206.98.109

Metadata provided with the acceptance:

| | |
|---|---|
| [illegible] | 1507255365 |
| [illegible] | 2003016311 |
| [illegible] | 54976650 |
| [illegible] | juloc21@gmail.com |
| [illegible] | Julie Locanas |

Exhibit A2

ExtraSpaceStorage.
LifeStorage STORAGE EXPRESS.
all affiliates of Extra Space Storage Inc.

Extra Space Storage
659 Woodlake Dr
Chesapeake VA, 23320
(757) 570-9165

**Rental Agreement Date:** Aug 30, 2023
**Rental Start Date:** Aug 30, 2023
**Account ID:** 2003016311
**Space Number:** 1350
**Approximate Size:** 4x10
**Monthly Rental Charge:** $40.00
**Monthly Due Date:** 30
**Paid Through Date:** 9/29/2023 12:00:00 PM
**Monthly Billing Election:** N

**CUSTOMER**

Name Julie Locanas
Address 3057 nutley st 275
City, State ZIP Fairfax, VA 22031
Cell Phone 5622864763
Alternate Phone
Identification CA B4161431 2025-10-31
Date of Birth 10/31/1977
E-mail juloc21@gmail.com

**ALTERNATE CONTACT**

Name Adrian Carter
Address 3057 nutley st
City, State ZIP Fairfax , VA 22031
Cell Phone 7576334038
E-mail
Authorized for Access? True
*If alternate information is refused, customer must sign here.*

X Julie Locanas Electronically signed on: 8/30/2023 2:36 PM EDT

**Others Authorized for Access (other than Customer):** , ,
*** Operator, in its sole discretion, may provide any individual(s) authorized for access in this Agreement with gate code, unit no., account information, and assist with lock cutting**

| Addendums | Is there a lien on any of the items to be stored? If yes, Lien Addendum is required. | Is a vehicle that requires state registration being stored? If yes, Vehicle Addendum is required. | Is Customer or Customer's spouse a service member in the military? If yes, Military Addendum is required. | Is Customer a business? If yes, Business Addendum is required. |
|---|---|---|---|---|
| | No | No | No | No |

**General Description of Property Stored:** Boxes, toys, personal items, suitcases, duffle bags

**Declared Value of Property Stored:** $1,000.00

Exhibit A2

| | |
|---|---|
| **Customer acknowledges that the information provided above is accurate and current.** | Customer signature: Julie Locanas<br>Electronically signed on: 8/30/2023 2:36 PM EDT |

THIS RENTAL AGREEMENT ("**Agreement**") is executed on the date stated above by and between EXTRA SPACE MANAGEMENT, INC. ("**Operator**") as agent for the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, and the individual or business listed above ("**Customer**") for the purpose of renting the space listed above (the "**Space**")which is part of a larger facility (the "**Facility**"). **CUSTOMER HAS EXAMINED THE SPACE AND FACILITY AND ACCEPTS THEM "AS IS." Customer acknowledges and agrees the measurements noted for the Facility and the spaces located thereon are an approximation only, do not refer to usable space and that the size of the Facility and any referenced sizes are approximate, given for illustration only and may vary materially.** Spaces may be smaller or larger than advertised. Spaces are not rented on a square foot basis and rent is not based on square foot measurements. Operator does not represent or guarantee the safety of the Facility or the personal property stored by Customer. **THE RULES AND REGULATIONS POSTED AT THE FACILITY, IF ANY, ARE BY REFERENCE MADE PART OF THIS AGREEMENT,** which rules and regulations may be modified by Operator to assist with the operation, safety, and cleanliness of the Facility. The Facility is operated in accordance with state and local laws governing self-storage facilities in the state where the Facility is located, which are herein incorporated by reference.

**TERM, MONTHLY RENTAL AMOUNTS AND OTHER CHARGES**

1) The term of this Agreement begins on the Rental Start Date listed above and shall continue on a **MONTH-TO-MONTH** basis until terminated.

2) The first Monthly Rental Charge and a one-time, non-refundable, administration fee shall be paid on the Rental Agreement Date listed above. Thereafter, the Monthly Rental Charge shall be due on the same day every month (the "**Monthly Due Date**"). The period between consecutive Monthly Due Dates is referred to as the "**Rental Month.**" The last day of the Rental Month for which all Monthly Rental Charges have been paid is the "**Paid Through Date.**" Customer shall pay Operator the Monthly Rental Charge, taxes and insurance in advance, without prior notice or billing from Operator. **NO MONTHLY BILLS OR STATEMENTS WILL BE SENT TO CUSTOMER UNLESS ELECTED ABOVE.** If Customer elects to receive monthly billing, a monthly service charge of $1.00 shall be added to Customer's account.

3) **If Customer does not pay the Monthly Rental Charge by the 5th day following Customer's Paid Through Date, Customer shall pay a late fee of $20.00 or 20% of the Monthly Rental Charge, whichever is greater. Operator may charge a late fee for each month Customer fails to pay the Monthly Rental Charge by the 5th day following the Paid Through Date. Late Fees will be assessed on or after the 6th day following Customer's current Paid Through Date.** Any late fees incurred by Customer are a service charge and not a penalty. Partial payments will not be accepted, however, if a partial payment is accepted it will be at the sole discretion of Operator and if accepted will first be applied to fees and service charges, then to Monthly Rental Charges, taxes and insurance. If at the close of business on the 30th day following the Customer's current Paid Through Date, the Monthly Rental Charge or other charges still remain past due, a pre-foreclosure fee of **$120.00** will be assessed and Customer must pay such amount by cash, credit card, or by certified funds. No personal/company checks will be accepted for past-due payments. It is agreed to and understood that partial payments made to cure a default for nonpayment of rent will not delay or stop foreclosure and sale of Customer's property. The tender of partial payments, if accepted, shall not serve to waive or avoid the legal effect of prior notices given to Customer. Only full payment on Customer's account prior to the published auction date will stop a scheduled sale of the property.

4) **Customer's Rental Terms May Change with 30 Days' Notice**. Customer acknowledges this Lease is month to month and that Operator may change or increase Customer's Monthly Rental Charge, fees and charges, due to changes in market conditions or for any other reason at any time upon 30 days' notice to Customer. Operator may send notice to Customer's email address or by any other method of notice described in Section 32 below. By continuing to use the Space after a rate change, Customer agrees to the Rental Agreement as changed and that all of its other terms remain in effect.

5) **IF CREDIT CARD OR OTHER PAYMENT INFORMATION IS PROVIDED BY CUSTOMER TO OPERATOR, CUSTOMER AUTHORIZES OPERATOR TO AUTOMATICALLY PROCESS THE PAYMENT VIA THE METHOD PROVIDED ON OR NEAR THE MONTHLY DUE DATE FOR MONTHLY RENTAL CHARGES, TAXES, INSURANCE, AND OTHER FEES AS APPLICABLE UNLESS OTHERWISE DIRECTED BY CUSTOMER. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO PROVIDE OPERATOR WITH ACCURATE, CURRENT AND WORKING**

Exhibit A2

**PAYMENT INFORMATION. THE FAILURE TO PROVIDE SUCH MAY RESULT IN NON-PAYMENT OF MONTHLY RENTAL CHARGES AND OTHER ACCRUED CHARGES, ALLOWING OPERATOR TO SELL CUSTOMER'S PERSONAL PROPERTY PURSUANT TO SECTION 22 BELOW. IT SHALL BE CUSTOMER'S SOLE RESPONSIBILITY TO VERIFY THAT PAYMENTS ARE MADE AND BY WHAT METHOD PAYMENTS ARE MADE. CUSTOMER MAY CANCEL AUTOMATIC PAYMENTS AT WWW.EXTRASPACE.COM USING THE ACCOUNT MANAGEMENT TOOL BY LOGGING IN AND CLICKING "CANCEL AUTOPAY" OR IN PERSON AT THE FACILITY'S OFFICE.**

Customer Initials: JL
Electronically signed on: 8/30/2023 2:36 PM EDT

6) Any checks returned for insufficient funds will result in a $25.00 service charge to Customer, and the returned check amount and service charge must be re-paid by cash, credit card, or money order. Customer shall not be permitted to pay with a check after two checks have been returned for insufficient funds. Operator may also, at its discretion, refuse to accept credit card payments if Customer's credit card charges have been disputed.

**ARBITRATION**

7) **Agreement to Arbitrate:** By initialing below, Customer agrees that, either Customer or Operator may elect to resolve any dispute by neutral, binding arbitration, on an individual basis only, and not by a court action, subject to the exceptions and terms set forth below. Customer acknowledges that he/she had the option of entering into an Agreement without an Arbitration provision, but voluntarily chose to enter into an Agreement with an Arbitration provision.

Except as provided below, Operator and Customer agree to arbitrate all Claims and Disputes between Operator and Customer.

"Claims" are any claims or controversies, at law or in equity, against each other related in any way to or arising out of in any way to this Rental Agreement, the Customer's use or occupancy of the Space and this Property or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation, even if it arises after the Agreement has terminated. "Claims" include, but are not limited to, claims related in any way to or arising out of in any way to any aspect of the relationship between Operator and Customer, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory. "Claims" also include such claims that Customer brings against Operator's employees, agents, parents, subsidiaries, affiliates, or other representatives or that Operator brings against Customer.

"Disputes" include without limitation disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Unless Customer and Operator each agree otherwise, the Arbitration will be conducted by a single, neutral third party arbitrator. OPERATOR AND CUSTOMER WAIVE THEIR RIGHT TO TRIAL BY JURY OR IN A COURT. The party initiating the arbitration shall select the arbitration organization, subject to the other party's agreement to use such arbitration organization, which shall not unreasonably be withheld. Unless otherwise agreed, the arbitration shall take place within the County where the defendant/respondent resides. The applicable rules of the arbitration organization will govern the arbitration.

For Claims that do not exceed the jurisdictional limit of small claims court, Operator and Customer agree to bring such Claims in small claims court instead of arbitration, and the rules of the small claims court shall apply. If the Claim does not qualify to be brought in small claims court, Operator will pay for the arbitration administrative or filing fees, including the arbitrator fees, up to an aggregate total of $2,500.

OPERATOR AND CUSTOMER AGREE THAT THEY WILL ONLY PURSUE ARBITRATION ON AN INDIVIDUAL BASIS AND WILL NOT PURSUE ARBITRATION OR ANY OTHER CLAIM ON A CLASS-WIDE, REPRESENTATIVE, OR CONSOLIDATED BASIS. OPERATOR AND CUSTOMER ALSO AGREE THAT THEY WILL NOT PARTICIPATE AS A MEMBER OF A CLASS, AS A CLASS REPRESENTATIVE, OR IN A CONSOLIDATED ACTION.

The right to arbitration under this Arbitration Provision is protected by, and any arbitration shall be governed by, the Federal Arbitration Act (9 U.S.C. §1 et seq.). The Operator and Customer agree that the Operator's business and the relationship here involve interstate commerce.

**Claims Not Subject to Arbitration.** In the event applicable law prohibits the arbitration of certain specified Claims, such Claims shall not be subject to this Section. Operator retains the right to pursue any eviction, action to enforce a lien and/or unlawful detainer remedies in any court. Operator retains the right to conduct a lien sale.

__X__ Customer agrees to the Arbitration Provision
____ Customer refuses the Arbitration Provision

Customer Initials: JL
Electronically signed on: 8/30/2023 2:36 PM EDT

**ACCESS**

8) Customer shall have access to the Space and the Facility only during such hours and days as are regularly posted at the Facility, which are subject to change by Operator. Any access to the Facility outside of access hours is considered trespassing. If Monthly Rental Charges or other charges remain unpaid for five (5) days following the Monthly Due Date, unless otherwise prohibited by law, Operator may restrict or deny Customer's access to the Space and/or Facility. If Customer is renting more than one Space at any given time, default on one rented Space shall constitute default on all rented Spaces, entitling Operator to deny access to Customer on all rented Spaces.

9) Customer shall provide the lock for the rental Space sufficient to secure Customer's personal property unless a permanent lock is already installed on the unit. Operator does not represent the adequacy of any particular lock, Customer shall not provide Operator, Operator's agents, authorized representatives and employees (collectively "**Operator's Agents**") with a key or any kind of access code to Customer's Space.

10) Customer grants Operator and Operator's Agents or any governmental authority access to the Space: a) upon three (3) days prior written notice, b) upon default of the Agreement by Customer for thirty (30) days, c) in emergency circumstances (defined as imminent injury to persons or property), or d) as required by law. If Customer fails to grant access, Operator, Operator's Agents or the agents of any governmental authority shall have the right to remove Customer's lock and enter the Space to examine the contents, to make repairs or alterations, to take reasonable steps to preserve the Space, to comply with the law, or to enforce Operator's rights; including the right to relocate Customer's belongings if necessary. In the event that Operator must replace the lock, Operator may charge Customer for the lock.

11) Customer shall safeguard any property stored at the Facility. It is Customer's sole responsibility as to those persons who are given access to Customer's Space and Operator shall not be liable for anyone other than Customer entering the Space unless by Operator's gross negligence.

**LIMITATIONS ON USE OF THE SPACE AND FACILITY**

12) Customer shall not make or allow any alterations to the Space. Customer agrees that the Space and Facility shall be used solely for the storage of personal property. Customer shall not loiter about the Facility, spend excessive or unnecessary time in or around the Space or interfere with the use of the Facility by other customers of Operator. Customer shall not use the Space for any unlawful purpose and expressly agrees not to use the Space for human or animal habitation. Customer shall not store in the Space or at the Facility anything to which any other person or business has right, title, or interest. Customer represents and warrants that there are NO LIENS OTHER THAN OPERATOR'S LIEN UPON THE PROPERTY STORED. A Lienholders Addendum to this Agreement must be completed if there are any lienholders on any stored property and for each stored vehicle, absent which such vehicle will be deemed unauthorized and be subject to removal from the Space and Facility. The storage of food and any perishable goods is strictly prohibited. The use of electricity in the Space is strictly prohibited unless agreed upon in writing by Operator. **IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT CUSTOMER SHALL NOT STORE OR USE IN THE SPACE OR AT THE FACILITY ANY HAZARDOUS OR TOXIC MATERIALS OR ANY INHERENTLY DANGEROUS OR FLAMMABLE SUBSTANCE.** In the event that any food, hazardous substances, or toxic materials are found in the Space, Operator has the right to dispose of such items without any notice to Customer.

13) Customer agrees that the Space is not appropriate for the storage of jewels, furs, heirlooms, art works, collectibles or other

irreplaceable items having special sentimental or emotional value to Customer and Customer agrees not to store said items. Customer hereby waives any claim for sentimental or emotional value for Customer's property that is stored in the Space or at the Facility.
14) If the Space is so equipped, Customer is prohibited from storing any items within 18" of the clearance to the fire sprinkler head diffuser for life safety reasons. Customer acknowledges that any items stored within 18" of the clearance of the fire sprinkler head diffuser may be removed by Operator and placed in a separate space without notice to Customer, all at Customer's expense.

**LIMITATION OF OPERATOR'S LIABILITY AND INDEMNITY**

15) **OPERATOR IS NOT A WAREHOUSEMAN ENGAGED IN THE BUSINESS OF STORING GOODS FOR HIRE, ANDNO BAILMENT IS CREATED BY THIS AGREEMENT. OPERATOR EXERCISES NEITHER CARE, CUSTODY, NOR CONTROL OVER CUSTOMER'S STORED PROPERTY AND ALL PROPERTY STORED WITHIN THE SPACE ORAT THE FACILITY BY CUSTOMER SHALL BE STORED AT CUSTOMER'S SOLE RISK.**
16) Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, shall not be liable to Customer for any damage or loss to any person or property at the Facility and to any property stored in the Space, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, mold, mildew, water, rain, rodents, insects, acts of God, partial or sole negligence or failure to act of Operator or Operator's Agents, except for damage or loss resulting from Operator's fraud, gross negligence or willful violation of law. Customer shall indemnify and hold Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, harmless from any and all damage, loss, or expense arising out of or in connection with any damage to any person or property, occurring in the Space or at the Facility arising in any way out of Customer's use of the Facility, even if such damage or loss is caused entirely or in part by the negligence of Operator, Operator's Agents, Operator's affiliates or the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different. Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, shall not be liable whatsoever to any extent to Customer or Customer's invitees, family, employees, agents or servants for any personal injury or death arising from Customer's use of the Space or Facility from any cause whatsoever including, but not limited to, the active or passive acts, omissions or negligence of Operator or Operator's Agents. Customer shall be responsible to pay or reimburse Operator for any damage caused to the Space or Facility by Customer or Customer's invitees, regardless of fault.
17) Climate controlled spaces are heated and cooled depending on outside temperature. These spaces do not provide constant internal temperature or humidity control. Operator does not warrant or guarantee temperature or humidity ranges in the Space due to changes in outside temperature and humidity, or due to other considerations, and Customer understands and assumes the risk of climate controlled spaces not meeting certain temperature and humidity requirements.
18) **Customer agrees that the total value of the property stored shall not exceed $5,000 unless Operator has agreed in writing for Customer to store property exceeding $5,000; provided that Customer agrees that Operator's maximum liability to Customer for any claim or suit by Customer, including but not limited to any suit alleging wrongful foreclosure or sale of Customer's property is $5,000. This section shall not create any liability on the part of Operator to Customer for any loss or damage to Customer's property, regardless of cause.**
19) No promises or representations of safety or security have been made to Customer by Operator or Operator's Agents. Operator makes no representation that video surveillance is present at any location or in any portion of a Facility and video surveillance equipment may be changed or removed at any time by Operator. There shall be no liability to Operator, Operator's Agents, Operator's affiliates or the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, in the event alarm, video system or sprinkler system, or any components thereof, shall fail or malfunction. **Video recording devices are not monitored.**
20) Operator's Agents are not authorized or permitted to make any warranties about the Space or the Facility. Operator's Agents' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES and shall not be relied upon by Customer. The entire agreement and understanding of the parties hereto are embodied in this writing and NO OTHER WARRANTIES are given.

**INSURANCE**

21) **Customer shall maintain comprehensive insurance coverage of at least 100% of the actual cash value of all personal property**

**stored in the Space against damage by water, fire, extended coverage perils, vandalism and burglary. To the extent Customer does not maintain insurance for the full value of the personal property stored, or fails to maintain insurance at all, Customer bears all risk of loss or damage.** Customer hereby releases Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, from any and all claims for damage or loss to personal property that are caused by or result from perils that are, or would be, covered under the required insurance policy and hereby waives any and all rights of recovery against Operator, Operator's Agents, Operator's affiliates and the Facility's owner or any other entity with whom Operator has entered into a management agreement for the Facility, as applicable, if different, in connection with any damage which is or would be covered by any such insurance policy. **CUSTOMER'S PERSONAL PROPERTY STORED IN THE SPACE OR AT THE FACILITY IS NOT INSURED BY OPERATOR AGAINST LOSS OR DAMAGE.**

**OPERATOR'S LIEN AND RIGHT TO ENFORCE UPON NONPAYMENT**

22) **CUSTOMER ACKNOWLEDGES AND AGREES THAT CUSTOMER'S PERSONAL PROPERTY STORED AT THE FACILITY WILL BE SUBJECT TO A CLAIM OF LIEN IN FAVOR OF OPERATOR FROM THE DATE THE MONTHLY RENTAL CHARGE AND OTHER CHARGES ARE DUEAND UNPAID, AND FOR EXPENSES REASONABLY INCURRED IN THE SALE OR DISPOSITION OF CUSTOMER'S STORED PERSONAL PROPERTY. OPERATOR MAY SELL CUSTOMER'S PERSONAL PROPERTY IN A COMMERCIALLY REASONABLE MANNER AFTER GIVING CUSTOMER REASONABLE NOTICE, IN ORDER TO SATISFY SUCH LIEN. CUSTOMER AGREES THAT ANY SPACE ADVERTISED AND SOLD USING AN ONLINE AUCTION PROVIDER IS DEEMED TO BE SOLD IN A COMMERCIALLY REASONABLE MANNER.** Operator may enforce Operator's Lien by selling Customer's stored personal property at public sale, in accordance with the provisions of applicable law, and apply the net proceeds from such sale to the payment of all sums due to Operator. This remedy is cumulative with and in addition to every other remedy given hereunder or hereafter existing at law or in equity. It is further understood that the date of sale of Customer's property pursuant to this section, if applicable, shall constitute the date of termination of this Agreement. In the event of a foreclosure of Customer's interest in the Space, it is understood and agreed that the liability of Customer for the rents, charges, costs and expenses provided for in this Agreement shall not be relinquished, diminished or extinguished prior to payment in full. Operator may use a collection agency to secure any remaining balance owed by Customer after the application of sale proceeds, if any. If any property remains unsold after foreclosure and sale, Operator may dispose of said property in any manner considered appropriate by Operator in its sole discretion.

23) Any time prior to lien sale, any person claiming a right to Customer's liened property may stop the sale by **paying in full in the form of CASH ONLY** all amounts owed. Upon release of such property to the payor, Operator shall have no further liability to any person for the liened property.

24) In addition to any other requirements of applicable law, Operator may post information relating to any public sale resulting from Operator's enforcement of its lien at the following website: http://auctions.extraspace.com.

25) If Customer's stored property is a motor vehicle or watercraft, in lieu of sale pursuant to Section 22 above, Operator may tow or cause to be towed from the Facility, such motor vehicle in accordance with DMV procedures. Operator is not responsible for damage or loss once tower takes possession.

**EVENT OF DEFAULT**

26) If Customer shall fail or refuse to perform any of the covenants, conditions or terms of this Agreement, or in the event Customer files a voluntary petition in Bankruptcy or suffers a petition in involuntary bankruptcy to be filed against him/her, Customer shall be deemed in default in the performance of this Agreement, except as limited by law. Nothing contained in this Agreement shall be construed as limiting Operator's rights and remedies as provided under the laws of the state where the Facility is located. In the event of a default, and without prejudice to any other remedies, Operator may (a) terminate this Agreement, or (b) seize and sell the personal property pursuant to Section 22 above.

**TERMINATION OF THE AGREEMENT AND VACATING THE SPACE**

27) Customer must provide Operator notice prior to vacating the Space and terminating this Agreement. Operator shall not be required under any circumstance to refund Customer's first month's rent or other charges paid at the time of execution of this Agreement. In addition, Operator shall not be required to prorate Monthly Rental Charges if Customer gives notice of termination to Operator and the termination date occurs during a Rental Month for which Customer already paid the Monthly Rental Charge. However, if Customer's

Exhibit A2

notice of termination includes a date of termination that is to occur during a future Rental Month, Operator shall prorate the Monthly Rental Charge for the Rental Month wherein termination occurs. Furthermore, Customer shall be entitled to a refund of any prepaid Rental Month Charges so long as Customer has not occupied the Space for any portion of the prepaid Rental Month at the time of termination.

Customer agrees to the refund policy outlined above.

Customer Initials: JL
Electronically signed on: 8/30/2023 2:36 PM EDT

28) If Customer is in default under this Agreement, or for any other reason in Operator's sole discretion, Operator may terminate this Agreement by giving Customer fifteen (15) days written notice.

29) If Customer or Operator terminates this Agreement as provided above, Customer agrees to move out and completely vacate the Space on or prior to the anticipated termination date. Customer shall leave the Space in the same condition as delivered to Customer. Any property left behind will be considered abandoned property and Operator may dispose of such in a manner that Operator sees fit. If Operator is forced to dispose of any abandoned property or forced to clean the Space, Operator may charge Customer a reasonable cleaning fee, which shall be an amount no less than $50.00. Upon Customer's notice of termination, Operator may consider this Agreement terminated and may relet the Space any time after the notification date provided. Customer shall be deemed to have conclusively abandoned all property which remains in the Space or on the Facility after the termination of this Agreement, upon default of this Agreement for thirty (30) days, or when Operator concludes based upon other reasonable considerations, including, but not limited to an unlocked Space, that Customer has abandoned Customer's property and the Space.

**AMENDING THE AGREEMENT**

30) All terms in this Agreement are **SUBJECT TO CHANGE** upon thirty (30) days written notice to Customer, including but not limited to, and without limitation, Monthly Rental Charges, late fees and other charges. Upon receiving notice of Operator's pending change(s) to this Agreement, Customer may terminate this Agreement on or before the effective date of such change by giving Operator written notice within ten (10) days of the change taking effect. If Customer does not give such notice of termination, the change shall become effective on the date stated in Operator's notice and shall thereafter apply to the occupancy hereunder, whether or not Customer has agreed to the change in writing.

**NOTICE**

31) Customer shall notify Operator of any change in Customer's address or phone number within ten (10) days of the change. Such notifications shall be (a) by certified mail, return receipt requested, postage prepaid, (b) delivered in person at the Facility's rental office (c) sent from customer via e-mail so long as the change of address request originates from the e-mail address Operator has on file for Customer, including the e-mail address provided in this Agreement if applicable, or (d) made at www.extraspace.com via online account management. Failure by Customer to notify Operator shall constitute a waiver by Customer of any defense based on failure to receive any notice.

32) Customer recognizes it is entering into a business relationship with Operator and to the fullest extent permitted by law, expressly consents to Operator contacting Customer via phone, e-mail or text messaging (including automated calls/messages) for purposes relevant to Customer's account or services related to Operator's business. Customer should review Customer's phone/text plan with its servicer to see if text message fees or data service rates apply and Customer agrees to accept such charges if applicable. Except as otherwise required by law, or as otherwise provided for in this Agreement, written notices or demands may be personally served by e-mail to the e-mail address provided by Customer in this Agreement (or updated e-mail address per separate notification as applicable) or by pre-paid first class U.S. Mail to the last known address of the party to be served, as contained in this Agreement. Such notice or demand shall be complete at on the date sent to Customer's e-mail address listed on this Agreement (or updated e-mail address per separate notification as applicable), if personally delivered (including e-mail), or on the date of prepaid, properly addressed deposit with the U.S. Postal Service.

Exhibit A-2

**MISCELLANEOUS**

33) Customer shall not assign, sublease or jointly occupy the Space or any portion thereof without in each instance obtaining the prior written consent of Operator.

34) All of the provisions of this Agreement shall be binding upon the heirs, executors, administrators, representatives, successors and assignees of the parties hereto.

35) Operator and Customer hereby waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross complaint, at law or in equity brought by either Operator against Customer or Customer against Operator arising out of or in any way connected with this Agreement, Customer's use or occupancy of the Space and the Facility or any claim of bodily injury or property damage, or the enforcement of any remedy under any law, ordinance, statute or regulation. Operator and Customer agree that no arbitration, small claims court proceeding or any other action or proceeding shall be brought against Operator or Customer more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises or whether based on tort, contract or any other legal theory.

36) If Customer is not an individual, the undersigned warrants that he or she is an authorized agent of Customer.

37) If Customer or Customer's spouse is in the military service, Customer must fill out the Addendum to this Agreement regarding military. If Customer's military status (or Customer's spouse's military status) changes during the term of this Agreement, Customer must provide written notice to Operator. Operator will rely on this information to determine the applicability of the Servicemembers Civil Relief Act.

38) Customer represents and warrants to Operator that Customer is not a party with whom Operator is prohibited from doing business pursuant to the regulations of the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, including those parties named on OFAC's Specially Designated Nationals and Blocked Persons List. Customer is currently in compliance with, and shall at all times during the Agreement term remain in compliance with, the regulations of OFAC and any other governmental requirement relating thereto. In the event of any violation of this section, Operator shall be entitled to immediately terminate this Agreement and take such other actions as are permitted or required to be taken under law or in equity. CUSTOMER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS OPERATOR FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES, LOSSES, RISKS, LIABILITIES AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COSTS) INCURRED BY OPERATOR ARISING FROM OR RELATED TO ANY BREACH OF THE FOREGOING CERTIFICATIONS. These indemnity obligations shall survive the expiration or earlier termination of this Agreement.

39) This Agreement contains the entire agreement of the parties and no representation or agreements, oral, or otherwise, between Operator and Customer not embodied herein shall be of any force or effect (except for written addenda agreed to between the parties).

40) By signing this Agreement, Customer acknowledges, accepts and consents to the collection and use of its data in accordance with the Extra Space Storage Privacy Policy located at www.extraspace.com/help/privacy.

41) Operator hereby notifies Customer that it operates pursuant to adopted environmental, social and governance (ESG) initiatives reported annually at https://ir.extraspace.com/sustainability.

42) As part of your agreement to rent, you may have received an initial rental discount. Your monthly rental charge is $40.00 as compared to the suggested rental rate of $69.00 for your storage unit.

Operator and Customer hereby execute this Agreement to be effective on the Rental Agreement Date listed above.

____________________

OPERATOR

Customer Signature: Julie Locanas
Electronically signed on: 8/30/2023 2:36 PM EDT
CUSTOMER

Virginia Lease -2306

Exhibit A2

## Contract details:

| Title | Version | ID |
|---|---|---|
| **CPP - COI Base** | 6.0 | 64ee54f01f58558ce5ee3e57 |

## Contract accepted by:

| | | |
|---|---|---|
| **Julie Locanas** | Signer ID: | 1507255365 |
| | Email: | juloc21@gmail.com |
| Date / Time | Aug 30, 2023 at 2:36 PM EDT | |
| IP Address | 174.206.98.109 | |

Metadata provided with the acceptance:

| | |
|---|---|
| [illegible] | 1507255365 |
| [illegible] | 2003016311 |
| [illegible] | 54976650 |
| [illegible] | juloc21@gmail.com |
| [illegible] | Julie Locanas |

Exhibit A-2

**CERTIFICATE OF STORAGE INSURANCE**

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA**
**CUSTOMER PROTECTION PLAN UNDER MASTER POLICY NUMBER: IM00002000**

This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by Occidental Fire & Casualty Company of North Carolina

**DEFINITIONS:**
When used in reference to this insurance, "you" and "your" refer to the person(s) named as tenant in the Rental Agreement. "We," "us" and "our" refer to the insurance company. In addition, certain words and phrases are defined as follows:
**OWNER** – shall mean the owner, landlord, lessor or operator of the self storage facility.
**RENTAL AGREEMENT** – means the Rental Agreement executed and in effect between you and the "owner".
**INSURANCE APPLICATION** – means the "Application For or Rejection of Insurance under the Customer Protection Plan" form you completed.
**AMOUNT OF INSURANCE** – means the amount of insurance that you designated by your initials in the application for coverage.
**PREMIUM** – means the amount shown in the insurance application as premium for your insurance.

**INSURING AGREEMENT:** We will provide insurance under The Master Policy in consideration of your payment of the premium shown in the Insurance Application.
**EFFECTIVE DATE:** This insurance attaches on the date shown in the Rental Agreement. This insurance shall remain in effect until terminated or cancelled as provided by this certificate. **PROPERTY INSURED:** We cover your personal property or the personal property of others for which you may be liable or have assumed liability prior to a loss: 1) while in storage within the enclosed storage space described in the Rental Agreement; or 2) while stored in a securely enclosed and locked vehicle or trailer and parked in a designated parking space. Vehicle, trailer and parking space are as described in the Rental Agreement. Vehicle or trailer will not be covered for any type of loss or damage, this coverage applies only to personal property securely stored inside a vehicle or trailer.

**PERILS INSURED AGAINST:** We cover direct loss to property insured by the following perils, except as otherwise excluded but limited to the amount of insurance.

a) Fire or Lightning
b) Windstorm or Hail
c) Explosion or Sonic Boom
d) Strikes, Riot or Civil Commotion
e) Aircraft, Self-propelled Missiles or Spacecraft
f) Vehicles
g) Smoke
h) Landslide, including sink hole collapse

i) Fire or Lightning
j) Windstorm or Hail
k) Explosion or Sonic Boom
l) Strikes, Riot or Civil Commotion
m) Aircraft, Self-propelled Missiles or Spacecraft
n) Vehicles
o) Smoke
p) Landslide, including sink hole collapse

**ADDITIONAL COVERAGES:** We will also provide these additional coverages up to the amounts stated below. These additional coverages do not increase the Amount of Insurance. **BURGLARY:** 100% of the amount of insurance for each insured loss by burglary or holdup. The term Burglary shall mean the act of stealing property by forcible entry into the storage space described in the Rental Agreement; however, this coverage only applies when such storage space is securely locked at the time of the forcible entry.
**DEBRIS REMOVAL:** 20% of the amount of your insurance under the Master Policy to cover the necessary expense incurred in the removal of debris from the property insured following an insured loss.
**TRANSIT:** 100% of the amount of your insurance under the Master Policy for loss by fire or by the collision or overturn of a motor vehicle or trailer upon which covered property is being transported while such property is in transit to or from the storage space, provided the property is within 50 miles of the described storage facility. There is no coverage for damage to a motor vehicle or trailer in transit.
**EXTRA RENTAL SPACE:** 20% of the amount of your insurance under the Master Policy to cover the extra expense necessarily incurred by you for the rental of substitute storage when occupancy of the described storage space is prevented as a result of loss or damage to storage facility building by a peril insured against in this policy.
**VERMIN (RODENTS AND INSECT PESTS):** 100% of the amount of insurance for each insured loss by damage from vermin. This additional coverage only applies when no food or food residue is stored within the storage unit or if the vermin are not brought in to the storage unit by the storage unit tenant.

**EXCLUSIONS:** We do not insure:
a) Accounts, bills, currency, deeds, evidence of debt, evidence of ownership, contracts and titles, securities, negotiable instruments, money, lottery tickets, notes, animals, jewelry, watches, precious or semi-precious stones, furs, or garments trimmed with fur, breakage of glass or similar fragile articles, illegal drugs, food, alcohol or explosives.
b) Against loss or damage caused by or resulting from wear and tear, gradual deterioration, maintenance, inherent vice, latent defect, vermin (moths, insects, rodents), mold, mildew, wet or dry rot, atmospheric condition and /or changes in temperature, delay, loss of use or loss of market. Exclusion for vermin applies only if food or food residue was stored in storage unit or if tenant brought vermin on to the insured premises.
c) Against loss or damage caused by, resulting from, contributing to or aggravated by earthquake, unless fire or explosion ensues, and then we will pay only for the ensuing loss.
d) Loss or damage caused by cigarettes or other smoking materials, unless fire ensues.
e) Loss or damage caused by the neglect of the Insured to use all reasonable means to save and preserve the insured property at and after the occurrence of any peril insured against, or when the insured property is endangered by an insured peril.
f) Loss or damage caused intentionally by the Insured or at the direction of the Insured.
g) Loss or damage of contraband, or caused by illegal transportation or trade.
h) Loss or damage resulting from activity in violation of the Lease Agreement.
i) Loss or damage caused by theft or mysterious disappearance, except burglary as covered herein.
j) Losses caused by nuclear hazards:
"Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled of however caused or any consequence of any of them. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these

Exhibit A2

perils are specifically named in or otherwise included within the "Perils Insured Against" clause.The insurance evidenced by this policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered
k) War risk and governmental action:
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by or due to any act or condition incident to the following:
Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual , impending or expected attack, By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
By military, naval or air forces or
By an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces.
Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence, and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

CPP - COI Base 20230828

Exhibit A2

**TERMINATION OF INSURANCE:** This insurance shall automatically terminate without notice to you:
On the date your Rental Agreement is terminated;
On the first day you fail to pay the premium in full for this insurance by the monthly anniversary day, or As provided in the Cancellation clause shown below.

**VALUATION:** The value of the property will be determined at the time of loss and will be the least of the following amounts:
The actual cash value of that property;
The cost of reasonably restoring that property to the condition immediately before loss; or The cost of replacing that property of like kind and quality.
**OTHER INSURANCE:** If a loss is also covered by other insurance, we will pay only the proportion of the loss that this amount of insurance bears to the total amount of insurance covering the loss.

**DUTIES YOU HAVE AFTER A LOSS:** You will give prompt notice to Site Manager at site location and to our authorized representative, listed below, and in case of Burglary also to the police. The notice should include:
How, when and where the loss occurred;
The property involved and your interest in it; and The names and addresses of any witnesses.

| | | | |
|---|---|---|---|
| On-line at:<br>Telephone: | IF YOU HAVE A LOSS report your claim on-line (preferred method of reporting): https://www.cppclaims.com<br>877-326-2438 | Beecher Carlson Insurance Services LLC<br>Six Concourse Pkwy, Suite 2300<br>Atlanta, GA 30328 | ESIS Claims<br>Attn: Extra Space Storage Claims Team<br>P.O. Box 6802 Scranton, PA 18505 |

**CONCEALMENT, MISREPRESENTATION AND FRAUD:** If you commit fraud by intentionally concealing or misrepresenting a material fact concerning
The insurance evidenced by this Certificate,
Covered property or
Your interest in the covered property
You will void your insurance under this policy and be subject to prosecution.

**EXAMINATION UNDER OATH:** Before recovering for any loss, if requested, you:
Will permit us to inspect the damaged property before it is disposed of or repaired;
Will send us a sworn statement of loss containing the information we request to settle your claim within 60 days of our request; Will agree to examinations under oath at our request;
Will produce others for examination under oath at our request;
Will provide us with all pertinent records needed to prove the loss; and Will cooperate with us in the investigation or settlement of the loss

**APPRAISAL:** If you and we do not agree as to the amount of loss, then you and we will select a competent appraiser upon receiving a written request from the other. The appraisers will select an umpire. If they do not agree on an umpire, the appraisers will ask a judge of a court of record of the state in which the appraisal is pending to make the selection. The written agreement of any two will be binding and set the amount of loss. You will pay the expense of your appraiser and we will pay for ours. You and we will share equally the expense of the umpire and the other expenses of the appraisal.

**LOSS PAYMENT/OTHER RECOVERIES:** We will pay or make good any insured loss under the insurance evidenced by this certificate within 30 days after we reach agreement with you, the entry of final judgment or the filing an arbitration award, whichever is earlier. We will not be liable for any part of a loss which has been paid or made good by others.
**LEGAL ACTION AGAINST US:** No one may bring legal action against us unless:
There has been full compliance with all terms of the insurance evidenced by this certificate; and Such action is brought within two years after you first have knowledge of a loss.

**TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS TO US:** If any person or organization to or from whom we make payment under the insurance evidenced by this certificate has a right to recover damages from another, that right must be transferred to us. That person or organization must do everything necessary to assist us, and must do nothing after the loss to hinder us in our recovery.
PAIR, SET OR PARTS:
Pair or Set. In case of loss to any part of a pair or set we may:
Repair or replace any part to restore the pair or set to its valuation before the loss; or Pay the difference between the valuation of the pair or set before and after the loss.
Parts. In case of loss to any part of covered property, consisting of several parts when complete, we will pay only for the valuation of the lost or damaged part.

**OPTIONAL ARBITRATION:** Except for decisions made under the appraisal condition, in the event you and we fail to agree as to the interpretation or applicability of any of the terms of our Insurance, you may elect to resolve the disagreement by binding arbitration in accordance with the statutory rules and procedures of the state in which the property is located or in accordance with the Commercial Arbitration Rules of the American Arbitration Association. This option is granted to you subject to the following terms and conditions:
Any arbitration instituted to determine coverage for a specific loss must be started within one year after the occurrence causing loss or damage.
This optional arbitration clause is intended to grant an additional right to you. All other terms and conditions of this contract remain the same, and no rights or duties of yours or ours shall be diminished or negated by reason of this clause or exercise of this option.

**CANCELLATION:** The insurance evidenced by this Certificate may be canceled at any time by you, upon providing advanced notice in writing to us or Beecher Carlson Insurance Services LLC. Beecher Carlson will send notice to your address shown on the Rental Agreement prior to the effective date of cancellation of this certificate. The insurance evidenced by this policy shall automatically terminate in event of non-payment or partial payment of premium as provided above without further notice to you. Premium for the month of cancellation is fully earned and there shall be no return premium due you for such month. If any part of this paragraph is in conflict with specific state requirements the state requirements will apply.

**CHANGES:** This Certificate and the Master Policy contains agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of The Master Policy.

CPP - COI Base 20230828

Exhibit A2

**APPLICATION FOR ACCEPTANCE OR REJECTION OF INSURANCE (MASTER POLICY: IM00002000)**

Space No.: 1327 Facility: **Extra Space Storage -** 1583 - Chesapeake - Woodlake Dr

**I UNDERSTAND THAT MY PROPERTY IS STORED AT MY SOLE RISK AND THAT I HAVE AGREED TO INSURE MY PERSONAL PROPERTY FOR ITS FULL VALUE AGAINST ALL RISKS**

Exhibit B1

I also understand that the owner, landlord, lessor or operator of this storage facility:
1) Is a commercial landlord renting storage space, is not a warehouseman, and does not take custody of my property.
2) Is not responsible for any loss to my property.
3) Does not provide insurance on my property for me.

**MY CHOICE OF INSURANCE OPTIONS:**

- **Obtain from my own insurance agent**
  Your existing home or business insurance policy might provide similar coverage. We are not qualified to evaluate your policy - an insurance agent will need to provide this service.

- **Obtain insurance available through Beecher Carlson Insurance Services LLC from Occidental Fire & Casualty Company of North Carolina.**

I understand and agree that under the options below, to the extent I do not purchase insurance, insurance lapses or do not fully insure my goods, I personally assume all risk of loss of the property in my storage space.

| INITIAL | Monthly Premium | Coverage Election: | $2,000 Base with Flood and Pest |
|---|---|---|---|
| JC 1503474942 | $11.00 | Added Coverage Riders:<br>Flood<br>Earthquake | $0.00<br><br>$0.00 |

If Occupant's insurance election is to purchase insurance available through Occidental Fire & Casualty Company of North Carolina, then Occupant also acknowledges the following.

I understand the amount noted is the amount I must pay for the insurance I have selected and is due no later than the date on which my monthly rent is due. This is a maximum coverage limit. The actual amount paid in the event of loss will be determined by proof of loss documentation. I authorize the owner, landlord, lessor or operator of this storage facility to receive the premium and to send it to the insurance company on my behalf.

I hereby apply to Occidental Fire & Casualty Company of North Carolina for insurance in the amount initialed above. I have voluntarily elected to purchase this insurance. I have read and completed this application for insurance provided in the policy underwritten by Occidental Fire & Casualty Company of North Carolina. Occidental Fire & Casualty Company of North Carolina may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which would then receive information about your insurance, and could then benefit from your purchase of this insurance.

**APPLICATION PAGE**: When I have properly completed, signed this application, made the first payment of premium and received a Certificate of Storage Insurance and my coverage will be effective as of the date I signed this page, for the amount of insurance I have selected and initialed above.

I understand my insurance will continue on a month-to-month basis as long as I continue to pay the premium noted above. Failure to pay any premium in full will result in the cancellation, without notice, of my insurance.

**ELIGIBILITY**: I understand that the opportunity to purchase insurance on property stored within the building is available to all Tenants/Occupants who have entered into a Rental Agreement with the owner, landlord, lessor or operator for enclosed storage space. Coverage does not apply to property stored in a commercial office suite, retail space, parking space, other open storage areas or any other location.

**POLICY CHANGES**: I understand that I will receive one month's notice of changes to the policy and/or premium rates, and the policy and/or new rate shall be effective on the 1st of the month following the month in which advance notice of such change is provided.

**INSURANCE INFORMATION**: I have received a copy of the Customer Insurance Program Brochure and Certificate of Customer Storage Insurance. If I should need any additional information regarding this program I can call or write Beecher Carlson Insurance Services LLC at the phone number or address listed below. **For the purpose of identification and reference, the printed number of the Rental Agreement is deemed to be the certificate number assigned to the Customer Protection Plan Certificate. Beecher Carlson Insurance Services LLC is an independent licensed insurance broker which represents Occidental Fire & Casualty Company of North Carolina.**

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

AMERICAN CLAIMS MANAGEMENT
P.O. Box 9033
Carlsbad, CA 92018
800-423-6071
Monday through Friday
10:00am to 8:00pm (Eastern Time)

**Manager of this facility is NOT an insurance agent. Please do not direct questions regarding insurance to them. Call 800.423.6071**

Tenant/Occupant Signature: Julie Carter Date: Feb 13, 2021

Tenant/Occupant Name: Julia Carter

# CUSTOMER PROTECTION PLAN
## THE SMART WAY TO INSURE VALUABLES

Exhibit B1

**Ensure your peace of mind. Insure your valuables.**
When it comes to putting your important belongings in storage, some things are out of your control—like flood, fire, windstorms and vandalism. Homeowner's or renter's insurance policies may provide insurance coverage for property in a storage space, but it might not be enough. With the Customer Protection Plan, you have the insurance you need to store your valuables with confidence and peace of mind.

**Easy and affordable.**
The Customer Protection Plan* features affordable rates and no deductible. It is a primary pay policy, meaning this coverage may work with a homeowner's policy that has a high deductible, possibly eliminating out of pocket expenses for a covered loss. When the time comes to make a claim, you'll have the help of a customer service professional.
In addition to covering many losses, the Customer Protection Plan also includes In-Transit Protection providing coverage for some mishaps while you move your items from home to storage. If you have questions about which items are covered, consult your policy certificate of insurance for details.

**Important information for our customers.**
Your self-storage facility is not responsible for any damage or loss to the property you store. All customers are required by the rental agreement to insure property stored at this facility. Contact your insurance agent to find out if your property stored at this location could have duplicate coverage under an existing policy. The insurance company may reinsure a substantial part of your insurance coverage with an affiliate of Extra Space Storage, which could then benefit from your purchase of this insurance. To review a Customer Protection Plan, call Beecher Carlson Insurance Services LLC at 1-800-423-6071 or email at ESSCPP@beechercarlson.com

**Comprehensive water damage protection.**
Almost all standard homeowner's, renter's and storage insurance policies do not cover water that rises from the ground, like that from a flood or major thunderstorm, water main breaks or spills from an adjacent unit.

At Extra Space, Flood Protection is included with each standard policy.

**Pest protection.**
Most homeowner's, renter's, and other storage insurance products do not cover rodent, insect, or vermin damage up to policy limits. The Customer Protection Plan offers this coverage for you - just another way to help bring you peace of mind (some exclusions apply). We help take the worry away.

**Insurance Rates**

| STANDARD POLICY RATES | |
|---|---|
| *Limits* | *Premium Rates*** |
| $2,000 | $11.00 |
| $3,000 | $16.50 |
| $5,000 | $26.00 |
| $10,000 | $47.00 |

---

** Underwritten by companies of IAT Insurance Group*

*** Monthly premium includes premium taxes*

**Filing a claim is simple.**

Exhibit B.

Step 1: Contact your storage Site Manager as soon as your loss is discovered.

Step 2: Contact a trained customer service representative at Beecher Carlson Insurance Services LLC at 1-800-423-6071; or at esclaims@ACMclaims.com; or at https://www.acmclaims.com/secureforms2/claim/extraspace

Step 3: Protect your items from further damage. Do not throw out or remove the damaged property until you have reported the incident and spoken with a Beecher claims adjuster. If possible, take photos or video.

**Time is valuable. Don't wait.**
The unexpected can happen in an instant; but with the Customer Protection Plan, you can be ready. Call today to give your valuables the insurance protection they deserve.

**Beecher Carlson Insurance Services LLC**

| | |
|---|---|
| Toll-free: | 1-800-423-6071 |
| Insurance Questions: | ESSCPP@beechercarlson.com |
| Claim Questions: | esclaims@ACMclaims.com |
| 24/7 claim reporting: | 1-800-423-6071 |
| Adjusters are available | Mon – Fri: 10 a.m. – 8 p.m., EST |

The purchase of insurance through the Customer Protection Plan is not required to lease a rental space.
*Most items in securely locked storage spaces are covered by the Customer Protection Plan and any purchased rider(s). The items not covered include, but are not limited to: deeds, legal documents, money, jewelry, watches, and furs, as well as any item(s) that are kept outside of a securely locked storage unit. Burglary is a covered risk when it's the result of forced entry into a securely locked storage space. Any unearned premium will be returned to insured if policy is cancelled. This brochure is a summary of coverage only and is not a policy or a certificate of insurance. Please refer to the Certificate of Insurance itself for coverage terms, conditions, and exclusions, which apply in the event of loss.*

*This plan is available to customers of:*

**Extra Space Storage**

You deserve Extra Space.

888-STORAGE
www.extraspace.com

©2017 Extra Space Storage LLC

Extra Space Storage
659 Woodlake Dr
Chesapeake, VA 23320

Exhibit B2

215*2*1******AUTO**MIXED AADC 380
Julie Locanas
3057 Nutley St., PMB 275
Fairfax, VA 22031-1931

Unit Number: 1350

Dear Julie Locanas,

In accordance with the cancellation provisions of your customer storage insurance, this notice is to advise you that your insurance coverage is being canceled per your request or for nonpayment of your insurance premium. This cancellation applies to insurance coverage for your personal property in storage at:

Storage Facility: 1583 - Chesapeake - Woodlake Dr

Facility Address: 659 Woodlake Dr
Chesapeake, VA 23320

Unit Number: 1350

Cancellation of your insurance coverage is effective as of 12/28/2023. If you wish to sign up for insurance again, or have any other questions regarding your personal storage needs please contact your site manager at (757) 570-9165.

# CERTIFICATE OF STORAGE INSURANCE

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA**
**CUSTOMER PROTECTION PLAN UNDER MASTER POLICY NUMBER: IM00002000**

Exhibit B2

This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by Occidental Fire & Casualty Company of North Carolina

**DEFINITIONS:**
When used in reference to this insurance, "you" and "your" refer to the person(s) named as tenant in the Rental Agreement. "We," "us" and "our" refer to the insurance company.
In addition, certain words and phrases are defined as follows:
**OWNER** – shall mean the owner, landlord, lessor or operator of the self storage facility.
**RENTAL AGREEMENT** – means the Rental Agreement executed and in effect between you and the "owner".
**INSURANCE APPLICATION** – means the "Application For or Rejection of Insurance under the Customer Protection Plan" form you completed.
**AMOUNT OF INSURANCE** – means the amount of insurance that you designated by your initials in the application for coverage.
**PREMIUM** – means the amount shown in the insurance application as premium for your insurance.

**INSURING AGREEMENT:** We will provide insurance under The Master Policy in consideration of your payment of the premium shown in the Insurance Application.
**EFFECTIVE DATE:** This insurance attaches on the date shown in the Rental Agreement. This insurance shall remain in effect until terminated or cancelled as provided by this certificate.
**PROPERTY INSURED:** We cover your personal property or the personal property of others for which you may be liable or have assumed liability prior to a loss: 1) while in storage within the enclosed storage space described in the Rental Agreement; or 2) while stored in a securely enclosed and locked vehicle or trailer and parked in a designated parking space. Vehicle, trailer and parking space are as described in the Rental Agreement. Vehicle or trailer will not be covered for any type of loss or damage, this coverage applies only to personal property securely stored inside a vehicle or trailer.

**PERILS INSURED AGAINST:** We cover direct loss to property insured by the following perils, except as otherwise excluded but limited to the amount of insurance.

a) Fire or Lightning
b) Windstorm or Hail
c) Explosion or Sonic Boom
d) Strikes, Riot or Civil Commotion
e) Aircraft, Self-propelled Missiles or Spacecraft
f) Vehicles
g) Smoke
h) Landslide, including sink hole collapse
i) Vandalism or Malicious Mischief
j) Falling objects, provided the exterior of the building containing the property is first damaged by such falling objects
k) Weight of Ice, Snow or Sleet
l) Collapse of Buildings containing the property insured, other than by earthquake
m) Water Damage except as excluded under Paragraphs (b) and (c) "Exclusions"
n) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not

**ADDITIONAL COVERAGES:** We will also provide these additional coverages up to the amounts stated below. These additional coverages do not increase the Amount of Insurance.
**BURGLARY:** 100% of the amount of insurance for each insured loss by burglary or holdup. The term Burglary shall mean the act of stealing property by forcible entry into the storage space described in the Rental Agreement; however, this coverage only applies when such storage space is securely locked at the time of the forcible entry.
**DEBRIS REMOVAL:** 20% of the amount of your insurance under the Master Policy to cover the necessary expense incurred in the removal of debris from the property insured following an insured loss.
**TRANSIT:** 100% of the amount of your insurance under the Master Policy for loss by fire or by the collision or overturn of a motor vehicle or trailer upon which covered property is being transported while such property is in transit to or from the storage space, provided the property is within 50 miles of the described storage facility. There is no coverage for damage to a motor vehicle or trailer in transit.
**EXTRA RENTAL SPACE:** 20% of the amount of your insurance under the Master Policy to cover the extra expense necessarily incurred by you for the rental of substitute storage when occupancy of the described storage space is prevented as a result of loss or damage to storage facility building by a peril insured against in this policy.
**VERMIN (RODENTS AND INSECT PESTS):** 100% of the amount of insurance for each insured loss by damage from vermin. This additional coverage only applies when no food or food residue is stored within the storage unit or if the vermin are not brought in to the storage unit by the storage unit tenant.

**EXCLUSIONS:** We do not insure:

a) Accounts, bills, currency, deeds, evidence of debt, evidence of ownership, contracts and titles, securities, negotiable instruments, money, lottery tickets, notes, animals, jewelry, watches, precious or semi-precious stones, furs, or garments trimmed with fur, breakage of glass or similar fragile articles, illegal drugs, food, alcohol and explosives.
b) Against loss or damage caused by or resulting from wear and tear, gradual deterioration, maintenance, inherent vice, latent defect, vermin (moths, insects, rodents), mold, mildew, wet or dry rot, atmospheric condition and /or changes in temperature, delay, loss of use or loss of market. Exclusion for vermin applies only if food or food residue was stored in storage unit or if tenant brought vermin on to the insured premises.
c) Against loss or damage caused by, resulting from, contributing to or aggravated by earthquake, unless fire or explosion ensues, and then we will pay only for the ensuing loss.
d) Loss or damage caused by cigarettes or other smoking materials, unless fire ensues.
e) Loss or damage caused by the neglect of the Insured to use all reasonable means to save and preserve the insured property at and after the occurrence of any peril insured against, or when the insured property is endangered by an insured peril.
f) Loss or damage caused intentionally by the Insured or at the direction of the Insured.
g) Loss or damage of contraband, or caused by illegal transportation or trade.
h) Loss or damage resulting from activity in violation of the Lease Agreement.
i) Loss or damage caused by theft or mysterious disappearance, except burglary as covered herein.
j) Losses caused by nuclear hazards:
"Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled of however caused or any consequence of any of them. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the "Perils Insured Against" clause.
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered
k) War risk and governmental action:
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by or due to any act or condition incident to the following:

Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual , impending or expected attack,
By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
By military, naval or air forces or
By an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces.
Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence, and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

Exhibit B2

**TERMINATION OF INSURANCE:** This insurance shall automatically terminate without notice to you:
On the date your Rental Agreement is terminated;
On the first day you fail to pay the premium in full for this insurance by the monthly anniversary day, or
As provided in the Cancellation clause shown below.

**VALUATION:** The value of the property will be determined at the time of loss and will be the least of the following amounts:
The actual cash value of that property;
The cost of reasonably restoring that property to the condition immediately before loss; or
The cost of replacing that property of like kind and quality.

**OTHER INSURANCE:** If a loss is also covered by other insurance, we will pay only the proportion of the loss that this amount of insurance bears to the total amount of insurance covering the loss.

**DUTIES YOU HAVE AFTER A LOSS:** You will give prompt notice to Owner at site location and to our authorized representative, listed below, and in case of Burglary also to the police. The notice should include:
How, when and where the loss occurred;
The property involved and your interest in it; and
The names and addresses of any witnesses.

| | | | |
|---|---|---|---|
| | IF YOU HAVE A LOSS: | Beecher Carlson Insurance Services LLC | Phone # 800 – 423 - 6071 |
| | Telephone, write or fax: | AMERICAN CLAIMS MANAGEMENT | (New claim reporting 24/7) |
| Or email to: | esclaims@ACMclaims.com | 8390 E. Crescent Parkway, Suite 200 | (Adjusters are available from 10:00 |
| or on-line at: | https://www.acmclaims.com/secureforms2/claim/extraspace | Greenwood Village, CO 80111 | AM to 8:00 PM EST) |

**CONCEALMENT, MISREPRESENTATION AND FRAUD:** If you commit fraud by intentionally concealing or misrepresenting a material fact concerning
The insurance evidenced by this Certificate,
Covered property or
Your interest in the covered property
You will void your insurance under this policy and be subject to prosecution.

**EXAMINATION UNDER OATH:** Before recovering for any loss, if requested, you:
Will permit us to inspect the damaged property before it is disposed of or repaired;
Will send us a swom statement of loss containing the information we request to settle your claim within 60 days of our request;
Will agree to examinations under oath at our request;
Will produce others for examination under oath at our request;
Will provide us with all pertinent records needed to prove the loss; and
Will cooperate with us in the investigation or settlement of the loss

**APPRAISAL:** If you and we do not agree as to the amount of loss, then you and we will select a competent appraiser upon receiving a written request from the other. The appraisers will select an umpire. If they do not agree on an umpire, the appraisers will ask a judge of a court of record of the state in which the appraisal is pending to make the selection. The written agreement of any two will be binding and set the amount of loss. You will pay the expense of your appraiser and we will pay for ours. You and we will share equally the expense of the umpire and the other expenses of the appraisal.

**LOSS PAYMENT/OTHER RECOVERIES:** We will pay or make good any insured loss under the insurance evidenced by this certificate within 30 days after we reach agreement with you, the entry of final judgment or the filing an arbitration award, whichever is earlier. We will not be liable for any part of a loss which has been paid or made good by others.

**LEGAL ACTION AGAINST US:** No one may bring legal action against us unless:
There has been full compliance with all terms of the insurance evidenced by this certificate; and
Such action is brought within two years after you first have knowledge of a loss.

**TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS TO US:** If any person or organization to or from whom we make payment under the insurance evidenced by this certificate has a right to recover damages from another, that right must be transferred to us. That person or organization must do everything necessary to assist us, and must do nothing after the loss to hinder us in our recovery.

**PAIR, SET OR PARTS:**
Pair or Set. In case of loss to any part of a pair or set we may:
Repair or replace any part to restore the pair or set to its valuation before the loss; or
Pay the difference between the valuation of the pair or set before and after the loss.
Parts. In case of loss to any part of covered property, consisting of several parts when complete, we will pay only for the valuation of the lost or damaged part.

**OPTIONAL ARBITRATION:** Except for decisions made under the appraisal condition, in the event you and we fail to agree as to the interpretation or applicability of any of the terms of our Insurance, you may elect to resolve the disagreement by binding arbitration in accordance with the statutory rules and procedures of the state in which the property is located or in accordance with the Commercial Arbitration Rules of the American Arbitration Association. This option is granted to you subject to the following terms and conditions:
Any arbitration instituted to determine coverage for a specific loss must be started within one year after the occurrence causing loss or damage.
This optional arbitration clause is intended to grant an additional right to you. All other terms and conditions of this contract remain the same, and no rights or duties of yours or ours shall be diminished or negated by reason of this clause or exercise of this option.

**CANCELLATION:** The insurance evidenced by this Certificate may be canceled at any time by you, upon providing advanced notice in writing to us or Beecher Carlson Insurance Services LLC. Beecher Carlson will send notice to your address shown on the Rental Agreement prior to the effective date of cancellation of this certificate. The insurance evidenced by this policy shall automatically terminate in event of non-payment or partial payment of premium as provided above without further notice to you. Premium for the month of cancellation is fully earned and there shall be no retum premium due you for such month. If any part of this paragraph is in conflict with specific state requirements the state requirements will apply.

**CHANGES:** This Certificate and the Master Policy contains agreements between you and us conceming the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of The Master Policy.

6:12

## CERTIFICATE OF STORAGE INSURANCE

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA**
**CUSTOMER PROTECTION PLAN UNDER MASTER POLICY NUMBER: IM00002000**

This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by Occidental Fire & Casualty Company of North Carolina

**DEFINITIONS:**
When used in reference to this insurance, "you" and "your" refer to the person(s) named as tenant in the Rental Agreement. "We," "us" and "our" refer to the insurance company.
In addition, certain words and phrases are defined as follows:
**OWNER** – shall mean the owner, landlord, lessor or operator of the self storage facility.
**RENTAL AGREEMENT** – means the Rental Agreement executed and in effect between you and the "owner".
**INSURANCE APPLICATION** – means the "Application For or Rejection of Insurance under the Customer Protection Plan" form you completed.
**AMOUNT OF INSURANCE** – means the amount of insurance that you designated by your initials in the application for coverage.
**PREMIUM** – means the amount shown in the insurance application as premium for your insurance.

**INSURING AGREEMENT:** We will provide insurance under The Master Policy in consideration of your payment of the premium shown in the Insurance Application.
**EFFECTIVE DATE:** This insurance attaches on the date shown in the Rental Agreement. This insurance shall remain in effect until terminated or cancelled as provided by this certificate.
**PROPERTY INSURED:** We cover your personal property or the personal property of others for which you may be liable or have assumed liability prior to a loss: 1) while in storage within the enclosed storage space described in the Rental Agreement; or 2) while stored in a securely enclosed and locked vehicle or trailer and parked in a designated parking space. Vehicle, trailer and parking space are as described in the Rental Agreement. Vehicle or trailer will not be covered for any type of loss or damage, this coverage applies only to personal property securely stored inside a vehicle or trailer.

**PERILS INSURED AGAINST:** We cover direct loss to property insured by the following perils, except as otherwise excluded but limited to the amount of insurance.
a) Fire or Lightning
b) Windstorm or Hail
c) Explosion or Sonic Boom
d) Strikes; Riot or Civil Commotion
e) Aircraft, Self-propelled Missles or Spacecraft
f) Vehicles
g) Smoke
h) Landslide, including sink hole collapse
i) Vandalism or Malicious Mischief
j) Falling objects, provided the exterior of the building containing the property is first damaged by such falling objects
k) Weight of Ice, Snow or Sleet
l) Collapse of Buildings containing the property insured, other than by earthquake
m) Water Damage except as excluded under Paragraphs (b) and (c) "Exclusions"
n) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not

**ADDITIONAL COVERAGES:** We will also provide these additional coverages up to the amounts stated below. These additional coverages do not increase the Amount of Insurance.
**BURGLARY:** 100% of the amount of Insurance for each insured loss by burglary or holdup. The term Burglary shall mean the act of stealing property by forcible entry into the storage space described in the Rental Agreement; however, this coverage only applies when such storage space is securely locked at the time of the forcible entry.
**DEBRIS REMOVAL:** 20% of the amount of your insurance under the Master Policy to cover the necessary expense incurred in the removal of debris from the property insured following an insured loss.
**TRANSIT:** 100% of the amount of your insurance under the Master Policy for loss by fire or by the collision or overturn of a motor vehicle or trailer upon which covered property is being transported while such property is in transit to or from the storage space; provided the property is within 50 miles of the described storage facility. There is no coverage for damage to a motor vehicle or trailer in transit.
**EXTRA RENTAL SPACE:** 20% of the amount of your insurance under the Master Policy to cover the extra expense necessarily incurred by you for the rental of substitute storage when occupancy of the described storage space is prevented as a result of loss or damage to storage facility building by a peril insured against in this policy.
**VERMIN (RODENTS AND INSECT PESTS):** 100% of the amount of insurance for each insured loss by damage from vermin. This additional coverage only applies when no food or food residue is stored within the storage unit or if the vermin are not brought in to the storage unit by the storage unit tenant.

**EXCLUSIONS:** We do not insure:
a) Accounts, bills, currency, deeds, evidence of debt, evidence of ownership, contracts and titles, securities, negotiable instruments; money, lottery tickets, notes, animals, jewelry, watches, precious or semi-precious stones, furs, or garments trimmed with fur, breakage of glass or similar fragile articles, illegal drugs, food, alcohol and explosives.
b) Against loss or damage caused by or resulting from wear and tear, gradual deterioration, maintenance, inherent vice, latent defect, vermin (moths, insects, rodents), mold, mildew, wet or dry rot, atmospheric condition and /or changes in temperature, delay, loss of use or loss of market. Exclusion for vermin applies only if food or food residue was stored in storage unit or if tenant brought vermin on to the insured premises.
c) Against loss or damage caused by, resulting from, contributing to or aggravated by earthquake, unless fire or explosion ensues, and then we will pay only for the ensuing loss.
d) Loss or damage caused by cigarettes or other smoking materials, unless fire ensues.
e) Loss or damage caused by the neglect of the insured to use all reasonable means to save and preserve the insured property at and after the occurrence of any peril insured against, or when the insured property is endangered by an insured peril.
f) Loss or damage caused intentionally by the insured or at the direction of the insured.
g) Loss or damage of contraband, or caused by illegal transportation or trade.
h) Loss or damage resulting from activity in violation of the Lease Agreement.
i) Loss or damage caused by theft or mysterious disappearance, except burglary as covered herein.
j) Losses caused by nuclear hazards:
"Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled of however caused or any consequence of any of them.
Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the "Perils Insured Against" clause.
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered
k) War risk and governmental action:
The insurance evidenced by this policy does not apply to loss caused directly or indirectly by or due to any act or condition incident to the following:

Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack,
By any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or
By military, naval or air forces or
By an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such governmental power, authority or forces.
Insurrection, rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such an occurrence; and seizure or destruction under quarantine, or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

COI-CPP Base 160601

# Rental Ledger - Julie Locanas-1507255365 (Unit #1350)

1583 - Chesapeake - Woodlake Dr

| Unit # | Account Number | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Baland |
|---|---|---|---|---|---|---|---|---|---|
| 1350 | 2003016311 | 1/29/2026 | | | | | | | |
| | | 8/30/2023 | Sales Order | 186223659 | Unit 1350 Rent: (Aug 30, 2023 thru Sep 29, 2023) | 40.00 | 40.00 | 0.00 | 40.0 |
| | | 8/30/2023 | Sales Order | 186223659 | Insurance 2000 coverage: (Aug 30, 2023 thru Sep 29, 2023) | 11.00 | 11.00 | 0.00 | 51.0 |
| | | 8/30/2023 | Sales Order | 186223659 | Administration Fee | 29.00 | 29.00 | 0.00 | 80.0 |
| | | 8/30/2023 | Sales Order | 186223659 | ES-670 2 3/4 Disc Padlock | 19.99 | 19.99 | 0.00 | 99.9 |
| | | 8/30/2023 | Sales Order | 186223659 | Virginia - 4.3000% | 0.86 | 0.86 | 0.00 | 100.8 |
| | | 8/30/2023 | Sales Order | 186223659 | Chesapeake City - 1.0000% | 0.20 | 0.20 | 0.00 | 101.0 |
| | | 8/30/2023 | Sales Order | 186223659 | Hampton Roads Region - 0.7000% | 0.14 | 0.14 | 0.00 | 101.1 |
| | | 8/30/2023 | Sales Order | 186223659 | Visa - Last4 - 4103 | 101.19 | 0.00 | 101.19 | 0.0 |
| | | 9/30/2023 | Invoice | 191338231 | Unit 1350 Rent: (Sep 30, 2023 thru Oct 29, 2023) | 40.00 | 40.00 | 0.00 | 40.0 |
| | | 9/30/2023 | Invoice | 191338231 | Insurance 2000 coverage: (Sep 30, 2023 thru Oct 29, 2023) | 11.00 | 11.00 | 0.00 | 51.0 |
| | | 10/5/2023 | Invoice | 192669347 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 71.0 |
| | | 10/30/2023 | Invoice | 196447229 | Unit 1350 Rent: (Oct 30, 2023 thru Nov 29, 2023) | 40.00 | 40.00 | 0.00 | 111.0 |
| | | 10/30/2023 | Invoice | 196447229 | Insurance 2000 coverage: (Oct 30, 2023 thru Nov 29, 2023) | 11.00 | 11.00 | 0.00 | 122.0 |
| | | 11/4/2023 | Invoice | 197697881 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 242.0 |
| | | 11/4/2023 | Invoice | 197697997 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 262.0 |
| | | 11/30/2023 | Invoice | 201620946 | Unit 1350 Rent: (Nov 30, 2023 thru Dec 29, 2023) | 40.00 | 40.00 | 0.00 | 302.0 |
| | | 11/30/2023 | Invoice | 201620946 | Insurance 2000 coverage: (Nov 30, 2023 thru Dec 29, 2023) | 11.00 | 11.00 | 0.00 | 313.0 |
| | | 12/30/2023 | Invoice | 206747742 | Unit 1350 Rent: (Dec 30, 2023 thru Jan 29, 2024) | 80.00 | 80.00 | 0.00 | 393.0 |
| | | 1/30/2024 | Invoice | 211876035 | Unit 1350 Rent: (Jan 30, 2024 thru Feb 29, 2024) | 80.00 | 80.00 | 0.00 | 473.0 |
| | | 1/31/2024 | Sales Order | 212030334 | Visa - 621818 Last4 - 4103 | 473.00 | 0.00 | 473.00 | 0.0 |
| | | 3/1/2024 | Invoice | 217317609 | Unit 1350 Rent: (Mar 1, 2024 thru Mar 29, 2024) | 80.00 | 80.00 | 0.00 | 80.0 |
| | | 3/6/2024 | Invoice | 218583549 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 100.0 |
| | | 3/7/2024 | Sales Order | 218805668 | Visa - 075709 Last4 - 5028 | 100.00 | 0.00 | 100.00 | 0.0 |
| | | 3/30/2024 | Invoice | 222247858 | Unit 1350 Rent: (Mar 30, 2024 thru Apr 29, 2024) | 80.00 | 80.00 | 0.00 | 80.0 |

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #13[illegible]7)

1583 - Chesapeake - Woodlake Dr

| nit # | Account Number | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 327 | 2000564787 | 2/12/2026 | | | | | | | |
| | | 2/13/2021 | Sales Order | 66695448 | Unit 1327 Rent: (Feb 13, 2021 thru Mar 12, 2021) | 24.00 | 24.00 | 0.00 | 24.00 |
| | | 2/13/2021 | Sales Order | 66695448 | Insurance 2000 coverage: (Feb 13, 2021 thru Mar 12, 2021) | 11.00 | 11.00 | 0.00 | 35.00 |
| | | 2/13/2021 | Sales Order | 66695448 | Administration Fee | 24.00 | 24.00 | 0.00 | 59.00 |
| | | 2/13/2021 | Sales Order | 66695448 | Visa - 602271 Last4 - 4103 | 59.00 | 0.00 | 59.00 | 0.00 |
| | | 3/13/2021 | Invoice | 69421037 | Unit 1327 Rent: (Mar 13, 2021 thru Apr 12, 2021) | 24.00 | 24.00 | 0.00 | 24.00 |
| | | 3/13/2021 | Invoice | 69421037 | Insurance 2000 coverage: (Mar 13, 2021 thru Apr 12, 2021) | 11.00 | 11.00 | 0.00 | 35.00 |
| | | 3/17/2021 | Sales Order | 69797542 | Visa - 011622 Last4 - 1931 | 35.00 | 0.00 | 35.00 | 0.00 |
| | | 4/13/2021 | Invoice | 72255795 | Unit 1327 Rent: (Apr 13, 2021 thru May 12, 2021) | 24.00 | 24.00 | 0.00 | 24.00 |
| | | 4/13/2021 | Invoice | 72255795 | Insurance 2000 coverage: (Apr 13, 2021 thru May 12, 2021) | 11.00 | 11.00 | 0.00 | 35.00 |
| | | 4/14/2021 | Sales Order | 72390739 | Visa - 972067 Last4 - 6769 | 35.00 | 0.00 | 35.00 | 0.00 |
| | | 5/13/2021 | Invoice | 75102841 | Unit 1327 Rent: (May 13, 2021 thru Jun 12, 2021) | 24.00 | 24.00 | 0.00 | 24.00 |
| | | 5/13/2021 | Invoice | 75102841 | Insurance 2000 coverage: (May 13, 2021 thru Jun 12, 2021) | 11.00 | 11.00 | 0.00 | 35.00 |
| | | 5/13/2021 | Sales Order | 75134639 | Visa - 721151 Last4 - 6769 | 35.00 | 0.00 | 35.00 | 0.00 |
| | | 6/7/2021 | Sales Order | 77555208 | Visa - 179345 Last4 - 6769 | 35.00 | 0.00 | 35.00 | (35.00) |
| | | 6/13/2021 | Invoice | 78017444 | Insurance 2000 coverage: (Jun 13, 2021 thru Jul 12, 2021) | 11.00 | 11.00 | 0.00 | (24.00) |
| | | 6/13/2021 | Invoice | 78017444 | Unit 1327 Rent: (Jun 13, 2021 thru Jul 12, 2021) | 24.00 | 24.00 | 0.00 | 0.00 |
| | | 7/13/2021 | Invoice | 80960037 | Unit 1327 Rent: (Jul 13, 2021 thru Aug 12, 2021) | 48.00 | 48.00 | 0.00 | 48.00 |
| | | 7/13/2021 | Invoice | 80960037 | Insurance 2000 coverage: (Jul 13, 2021 thru Aug 12, 2021) | 11.00 | 11.00 | 0.00 | 59.00 |
| | | 7/15/2021 | Sales Order | 81239253 | Visa - 067208 Last4 - 3802 | 59.00 | 0.00 | 59.00 | 0.00 |
| | | 8/13/2021 | Invoice | 84088257 | Unit 1327 Rent: (Aug 13, 2021 thru Sep 12, 2021) | 48.00 | 48.00 | 0.00 | 48.00 |
| | | 8/13/2021 | Invoice | 84088257 | Insurance 2000 coverage: (Aug 13, 2021 thru Sep 12, 2021) | 11.00 | 11.00 | 0.00 | 59.00 |
| | | 8/17/2021 | Sales Order | 84521558 | Visa - 091759 Last4 - 6769 | 59.00 | 0.00 | 59.00 | 0.00 |
| | | 9/13/2021 | Invoice | 87149451 | Unit 1327 Rent: (Sep 13, 2021 thru Oct 12, 2021) | 48.00 | 48.00 | 0.00 | 48.00 |
| | | 9/13/2021 | Invoice | 87149451 | Insurance 2000 coverage: (Sep 13, 2021 thru Oct 12, 2021) | 11.00 | 11.00 | 0.00 | 59.00 |
| | | 9/18/2021 | Invoice | 87626096 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 79.00 |
| | | 10/13/2021 | Invoice | 90218121 | Unit 1327 Rent: (Oct 13, 2021 thru Nov 12, 2021) | 48.00 | 48.00 | 0.00 | 127.00 |
| | | 10/13/2021 | Invoice | 90218121 | Insurance 2000 coverage: (Oct 13, 2021 thru Nov 12, 2021) | 11.00 | 11.00 | 0.00 | 138.00 |
| | | 10/18/2021 | Invoice | 90678873 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 258.00 |
| | | 10/18/2021 | Invoice | 90679002 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 278.00 |
| | | 10/21/2021 | Waive | 91025243 | Late Fee (20/20) | (20.00) | 0.00 | 20.00 | 258.00 |
| | | 10/23/2021 | Sales Order | 91173334 | America Express - 852299 Last4 - 1029 | 258.00 | 0.00 | 258.00 | 0.00 |
| | | 11/12/2021 | Sales Order | 93282368 | Visa - 023043 Last4 - 1931 | 59.00 | 0.00 | 59.00 | (59.00) |
| | | 11/13/2021 | Invoice | 93306130 | Unit 1327 Rent: (Nov 13, 2021 thru Dec 12, 2021) | 48.00 | 48.00 | 0.00 | (11.00) |
| | | 11/13/2021 | Invoice | 93306130 | Insurance 2000 coverage: (Nov 13, 2021 thru Dec 12, 2021) | 11.00 | 11.00 | 0.00 | 0.00 |
| | | 12/11/2021 | Sales Order | 96264184 | Visa - 031434 Last4 - 4103 | 59.00 | 0.00 | 59.00 | (59.00) |
| | | 12/13/2021 | Invoice | 96367735 | Unit 1327 Rent: (Dec 13, 2021 thru Jan 12, 2022) | 48.00 | 48.00 | 0.00 | (11.00) |



Exhibit C1

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #1327)

1583 - Chesapeake - Woodlake Dr

| [illegible] | [illegible] | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 327 | 2000564787 | 12/13/2021 | Invoice | 96367735 | Insurance 2000 coverage: (Dec 13, 2021 thru Jan 12, 2022) | 11.00 | 11.00 | 0.00 | 0.00 |
| | | 1/13/2022 | Invoice | 99473413 | Unit 1327 Rent: (Jan 13, 2022 thru Feb 12, 2022) | 48.00 | 48.00 | 0.00 | 48.00 |
| | | 1/13/2022 | Invoice | 99473413 | Insurance 2000 coverage: (Jan 13, 2022 thru Feb 12, 2022) | 11.00 | 11.00 | 0.00 | 59.00 |
| | | 1/18/2022 | Invoice | 99935014 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 79.00 |
| | | 2/12/2022 | Sales Order | 102541790 | Visa - 208714 Last4 - 4103 | 79.00 | 0.00 | 79.00 | 0.00 |
| | | 2/13/2022 | Invoice | 102567245 | Unit 1327 Rent: (Feb 13, 2022 thru Mar 12, 2022) | 48.00 | 48.00 | 0.00 | 48.00 |
| | | 2/13/2022 | Invoice | 102567245 | Insurance 2000 coverage: (Feb 13, 2022 thru Mar 12, 2022) | 11.00 | 11.00 | 0.00 | 59.00 |
| | | 2/18/2022 | Invoice | 103018257 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 79.00 |
| | | 2/19/2022 | Sales Order | 103171647 | Visa - 027618 Last4 - 1931 | 79.00 | 0.00 | 79.00 | 0.00 |
| | | 3/11/2022 | Sales Order | 105494911 | Visa - 031818 Last4 - 1931 | 59.00 | 0.00 | 59.00 | (59.00) |
| | | 3/13/2022 | Invoice | 105618940 | Unit 1327 Rent: (Mar 13, 2022 thru Apr 12, 2022) | 48.00 | 48.00 | 0.00 | (11.00) |
| | | 3/13/2022 | Invoice | 105618940 | Insurance 2000 coverage: (Mar 13, 2022 thru Apr 12, 2022) | 11.00 | 11.00 | 0.00 | 0.00 |
| | | 4/8/2022 | Sales Order | 108304782 | Visa - 060588 Last4 - 1931 | 89.00 | 0.00 | 89.00 | (89.00) |
| | | 4/13/2022 | Invoice | 108713180 | Unit 1327 Rent: (Apr 13, 2022 thru May 12, 2022) | 78.00 | 78.00 | 0.00 | (11.00) |
| | | 4/13/2022 | Invoice | 108713180 | Insurance 2000 coverage: (Apr 13, 2022 thru May 12, 2022) | 11.00 | 11.00 | 0.00 | 0.00 |
| | | 5/13/2022 | Invoice | 111856585 | Unit 1327 Rent: (May 13, 2022 thru Jun 12, 2022) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 5/13/2022 | Invoice | 111856585 | Insurance 2000 coverage: (May 13, 2022 thru Jun 12, 2022) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 5/18/2022 | Invoice | 112331701 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 5/24/2022 | Sales Order | 112977416 | Visa - 033456 Last4 - 1931 | 109.00 | 0.00 | 109.00 | 0.00 |
| | | 6/13/2022 | Invoice | 115086662 | Unit 1327 Rent: (Jun 13, 2022 thru Jul 12, 2022) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 6/13/2022 | Invoice | 115086662 | Insurance 2000 coverage: (Jun 13, 2022 thru Jul 12, 2022) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 6/18/2022 | Invoice | 115586595 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 6/20/2022 | Sales Order | 115841297 | Mastercard - 072258 Last4 - 8143 | 109.00 | 0.00 | 109.00 | 0.00 |
| | | 7/13/2022 | Invoice | 118350255 | Unit 1327 Rent: (Jul 13, 2022 thru Aug 12, 2022) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 7/13/2022 | Invoice | 118350255 | Insurance 2000 coverage: (Jul 13, 2022 thru Aug 12, 2022) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 7/18/2022 | Invoice | 118841154 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 7/19/2022 | Sales Order | 118994259 | Visa - 016375 Last4 - 1931 | 109.00 | 0.00 | 109.00 | 0.00 |
| | | 8/13/2022 | Invoice | 121686887 | Unit 1327 Rent: (Aug 13, 2022 thru Sep 12, 2022) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 8/13/2022 | Invoice | 121686887 | Insurance 2000 coverage: (Aug 13, 2022 thru Sep 12, 2022) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 8/18/2022 | Invoice | 122180944 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 8/22/2022 | Sales Order | 122594763 | Visa - 106566 Last4 - 4103 | 109.00 | 0.00 | 109.00 | 0.00 |
| | | 9/13/2022 | Invoice | 125010307 | Unit 1327 Rent: (Sep 13, 2022 thru Oct 12, 2022) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 9/13/2022 | Invoice | 125010307 | Insurance 2000 coverage: (Sep 13, 2022 thru Oct 12, 2022) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 9/18/2022 | Invoice | 125516857 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 10/13/2022 | Invoice | 128326140 | Unit 1327 Rent: (Oct 13, 2022 thru Nov 12, 2022) | 78.00 | 78.00 | 0.00 | 187.00 |
| | | 10/13/2022 | Invoice | 128326140 | Insurance 2000 coverage: (Oct 13, 2022 thru Nov 12, 2022) | 11.00 | 11.00 | 0.00 | 198.00 |
| | | 10/18/2022 | Invoice | 128826232 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 318.00 |



Exhibit C1

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #1327)

1583 - Chesapeake - Woodlake Dr

| [illegible] | [illegible] | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 327 | 2000564787 | 10/18/2022 | Invoice | 128826331 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 338.00 |
| | | 11/13/2022 | Invoice | 131666245 | Unit 1327 Rent: (Nov 13, 2022 thru Dec 12, 2022) | 78.00 | 78.00 | 0.00 | 416.00 |
| | | 11/13/2022 | Invoice | 131666245 | Insurance 2000 coverage: (Nov 13, 2022 thru Dec 12, 2022) | 11.00 | 11.00 | 0.00 | 427.00 |
| | | 11/29/2022 | Sales Order | 133340013 | Visa - Last4 - 4103 | 427.00 | 0.00 | 427.00 | 0.00 |
| | | 12/13/2022 | Invoice | 134949439 | Unit 1327 Rent: (Dec 13, 2022 thru Jan 12, 2023) | 78.00 | 78.00 | 0.00 | 78.00 |
| | | 12/13/2022 | Invoice | 134949439 | Insurance 2000 coverage: (Dec 13, 2022 thru Jan 12, 2023) | 11.00 | 11.00 | 0.00 | 89.00 |
| | | 12/18/2022 | Invoice | 135446652 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 109.00 |
| | | 1/13/2023 | Invoice | 138207537 | Unit 1327 Rent: (Jan 13, 2023 thru Feb 12, 2023) | 78.00 | 78.00 | 0.00 | 187.00 |
| | | 1/13/2023 | Invoice | 138207537 | Insurance 2000 coverage: (Jan 13, 2023 thru Feb 12, 2023) | 11.00 | 11.00 | 0.00 | 198.00 |
| | | 1/17/2023 | Invoice | 138597724 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 318.00 |
| | | 1/17/2023 | Invoice | 138597803 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 338.00 |
| | | 1/30/2023 | Sales Order | 139930501 | Visa - 717928 Last4 - 4103 | 338.00 | 0.00 | 338.00 | 0.00 |
| | | 2/13/2023 | Invoice | 141472821 | Unit 1327 Rent: (Feb 13, 2023 thru Mar 12, 2023) | 87.00 | 87.00 | 0.00 | 87.00 |
| | | 2/13/2023 | Invoice | 141472821 | Insurance 2000 coverage: (Feb 13, 2023 thru Mar 12, 2023) | 11.00 | 11.00 | 0.00 | 98.00 |
| | | 2/19/2023 | Invoice | 142022021 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 118.00 |
| | | 3/13/2023 | Invoice | 144724099 | Unit 1327 Rent: (Mar 13, 2023 thru Apr 12, 2023) | 87.00 | 87.00 | 0.00 | 205.00 |
| | | 3/13/2023 | Invoice | 144724099 | Insurance 2000 coverage: (Mar 13, 2023 thru Apr 12, 2023) | 11.00 | 11.00 | 0.00 | 216.00 |
| | | 3/20/2023 | Invoice | 145434740 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 336.00 |
| | | 3/20/2023 | Invoice | 145434827 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 356.00 |
| | | 4/13/2023 | Invoice | 148097603 | Unit 1327 Rent: (Apr 13, 2023 thru May 12, 2023) | 87.00 | 87.00 | 0.00 | 443.00 |
| | | 4/13/2023 | Invoice | 148097603 | Insurance 2000 coverage: (Apr 13, 2023 thru May 12, 2023) | 11.00 | 11.00 | 0.00 | 454.00 |
| | | 5/3/2023 | Sales Order | 150495099 | Visa - Last4 - 8347 | 454.00 | 0.00 | 454.00 | 0.00 |
| | | 5/3/2023 | Invoice | 150501848 | ES-670 2 3/4 Disc Padlock | 19.99 | 19.99 | 0.00 | 19.99 |
| | | 5/3/2023 | Invoice | 150501848 | Virginia - 4.3000% | 0.86 | 0.86 | 0.00 | 20.85 |
| | | 5/3/2023 | Invoice | 150501848 | Chesapeake City - 1.0000% | 0.20 | 0.20 | 0.00 | 21.05 |
| | | 5/3/2023 | Invoice | 150501848 | Hampton Roads Region - 0.7000% | 0.14 | 0.14 | 0.00 | 21.19 |
| | | 5/13/2023 | Invoice | 151523868 | Unit 1327 Rent: (May 13, 2023 thru Jun 12, 2023) | 87.00 | 87.00 | 0.00 | 108.19 |
| | | 5/13/2023 | Invoice | 151523868 | Insurance 2000 coverage: (May 13, 2023 thru Jun 12, 2023) | 11.00 | 11.00 | 0.00 | 119.19 |
| | | 5/18/2023 | Invoice | 152033994 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 139.19 |
| | | 6/13/2023 | Invoice | 154995689 | Unit 1327 Rent: (Jun 13, 2023 thru Jul 12, 2023) | 87.00 | 87.00 | 0.00 | 226.19 |
| | | 6/13/2023 | Invoice | 154995689 | Insurance 2000 coverage: (Jun 13, 2023 thru Jul 12, 2023) | 11.00 | 11.00 | 0.00 | 237.19 |
| | | 6/17/2023 | Invoice | 155426872 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 357.19 |
| | | 6/17/2023 | Invoice | 155426922 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 377.19 |
| | | 7/13/2023 | Invoice | 158495986 | Unit 1327 Rent: (Jul 13, 2023 thru Aug 12, 2023) | 87.00 | 87.00 | 0.00 | 464.19 |
| | | 7/13/2023 | Invoice | 158495986 | Insurance 2000 coverage: (Jul 13, 2023 thru Aug 12, 2023) | 11.00 | 11.00 | 0.00 | 475.19 |
| | | 8/3/2023 | Sales Order | 173160442 | ES-670 2 3/4 Disc Padlock | 19.99 | 19.99 | 0.00 | 495.18 |
| | | 8/3/2023 | Sales Order | 173160442 | Visa - 304654 Last4 - 4103 | 475.19 | 0.00 | 475.19 | 19.99 |



Exhibit C1

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #1327)

1583 - Chesapeake - Woodlake Dr

| | | PTD / Trn Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1327 | 2000564787 | 8/13/2023 | Invoice | 183554207 | Unit 1327 Rent: (Aug 13, 2023 thru Sep 12, 2023) | 87.00 | 87.00 | 0.00 | 106.99 |
| | | 8/13/2023 | Invoice | 183554207 | Insurance 2000 coverage: (Aug 13, 2023 thru Sep 12, 2023) | 11.00 | 11.00 | 0.00 | 117.99 |
| | | 8/16/2023 | Sales Order | 184066320 | ES-670 2 3/4 Disc Padlock | 19.99 | 19.99 | 0.00 | 137.98 |
| | | 8/16/2023 | Sales Order | 184066320 | Virginia - 4.3000% | 0.86 | 0.86 | 0.00 | 138.84 |
| | | 8/16/2023 | Sales Order | 184066320 | Chesapeake City - 1.0000% | 0.20 | 0.20 | 0.00 | 139.04 |
| | | 8/16/2023 | Sales Order | 184066320 | Hampton Roads Region - 0.7000% | 0.14 | 0.14 | 0.00 | 139.18 |
| | | 8/16/2023 | Sales Order | 184066320 | Visa - 000914 Last4 - 5028 | 119.19 | 0.00 | 119.19 | 19.99 |
| | | 9/13/2023 | Invoice | 188720109 | Unit 1327 Rent: (Sep 13, 2023 thru Oct 12, 2023) | 87.00 | 87.00 | 0.00 | 106.99 |
| | | 9/13/2023 | Invoice | 188720109 | Insurance 2000 coverage: (Sep 13, 2023 thru Oct 12, 2023) | 11.00 | 11.00 | 0.00 | 117.99 |
| | | 9/13/2023 | Payment | 188720542 | EasyPay - Visa Last4 - 5028 | 98.00 | 0.00 | 98.00 | 19.99 |
| | | 10/13/2023 | Invoice | 193884236 | Unit 1327 Rent: (Oct 13, 2023 thru Nov 12, 2023) | 87.00 | 87.00 | 0.00 | 106.99 |
| | | 10/13/2023 | Invoice | 193884236 | Insurance 2000 coverage: (Oct 13, 2023 thru Nov 12, 2023) | 11.00 | 11.00 | 0.00 | 117.99 |
| | | 10/13/2023 | Payment | 193884445 | EasyPay - Visa Last4 - 5028 | 98.00 | 0.00 | 98.00 | 19.99 |
| | | 11/13/2023 | Invoice | 199053736 | Unit 1327 Rent: (Nov 13, 2023 thru Dec 12, 2023) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 11/13/2023 | Invoice | 199053736 | Insurance 2000 coverage: (Nov 13, 2023 thru Dec 12, 2023) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 11/13/2023 | Payment | 199053891 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 12/13/2023 | Invoice | 204174103 | Unit 1327 Rent: (Dec 13, 2023 thru Jan 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 12/13/2023 | Invoice | 204174103 | Insurance 2000 coverage: (Dec 13, 2023 thru Jan 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 12/13/2023 | Payment | 204174548 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 1/13/2024 | Invoice | 209324833 | Unit 1327 Rent: (Jan 13, 2024 thru Feb 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 1/13/2024 | Invoice | 209324833 | Insurance 2000 coverage: (Jan 13, 2024 thru Feb 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 1/13/2024 | Payment | 209325101 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 2/13/2024 | Invoice | 214460763 | Unit 1327 Rent: (Feb 13, 2024 thru Mar 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 2/13/2024 | Invoice | 214460763 | Insurance 2000 coverage: (Feb 13, 2024 thru Mar 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 2/13/2024 | Payment | 214461071 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 3/13/2024 | Invoice | 219633553 | Unit 1327 Rent: (Mar 13, 2024 thru Apr 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 3/13/2024 | Invoice | 219633553 | Insurance 2000 coverage: (Mar 13, 2024 thru Apr 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 3/13/2024 | Payment | 219633788 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 4/13/2024 | Invoice | 224861062 | Unit 1327 Rent: (Apr 13, 2024 thru May 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 4/13/2024 | Invoice | 224861062 | Insurance 2000 coverage: (Apr 13, 2024 thru May 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 4/13/2024 | Payment | 224954927 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 5/13/2024 | Invoice | 230138472 | Unit 1327 Rent: (May 13, 2024 thru Jun 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 5/13/2024 | Invoice | 230138472 | Insurance 2000 coverage: (May 13, 2024 thru Jun 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 5/13/2024 | Payment | 230167631 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 6/13/2024 | Invoice | 235548656 | Unit 1327 Rent: (Jun 13, 2024 thru Jul 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 6/13/2024 | Invoice | 235548656 | Insurance 2000 coverage: (Jun 13, 2024 thru Jul 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 6/13/2024 | Payment | 235548997 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |



Exhibit C,

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #1327)

1583 - Chesapeake - Woodlake Dr

| [illegible] | [illegible] | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 327 | 2000564787 | 7/13/2024 | Invoice | 240976449 | Unit 1327 Rent: (Jul 13, 2024 thru Aug 12, 2024) | 90.00 | 90.00 | 0.00 | 109.99 |
| | | 7/13/2024 | Invoice | 240976449 | Insurance 2000 coverage: (Jul 13, 2024 thru Aug 12, 2024) | 11.00 | 11.00 | 0.00 | 120.99 |
| | | 7/13/2024 | Payment | 240976878 | EasyPay - Visa Last4 - 5028 | 101.00 | 0.00 | 101.00 | 19.99 |
| | | 8/13/2024 | Invoice | 246462052 | Unit 1327 Rent: (Aug 13, 2024 thru Sep 12, 2024) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 8/13/2024 | Invoice | 246462052 | Insurance 2000 coverage: (Aug 13, 2024 thru Sep 12, 2024) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 8/13/2024 | Payment | 246462297 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 9/13/2024 | Invoice | 251978796 | Unit 1327 Rent: (Sep 13, 2024 thru Oct 12, 2024) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 9/13/2024 | Invoice | 251978796 | Insurance 2000 coverage: (Sep 13, 2024 thru Oct 12, 2024) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 9/13/2024 | Payment | 251979074 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 10/13/2024 | Invoice | 257452939 | Unit 1327 Rent: (Oct 13, 2024 thru Nov 12, 2024) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 10/13/2024 | Invoice | 257452939 | Insurance 2000 coverage: (Oct 13, 2024 thru Nov 12, 2024) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 10/16/2024 | Payment | 257993697 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 11/13/2024 | Invoice | 262948511 | Unit 1327 Rent: (Nov 13, 2024 thru Dec 12, 2024) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 11/13/2024 | Invoice | 262948511 | Insurance 2000 coverage: (Nov 13, 2024 thru Dec 12, 2024) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 11/13/2024 | Payment | 262948754 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 12/13/2024 | Invoice | 268464768 | Unit 1327 Rent: (Dec 13, 2024 thru Jan 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 12/13/2024 | Invoice | 268464768 | Insurance 2000 coverage: (Dec 13, 2024 thru Jan 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 12/13/2024 | Payment | 268465020 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 1/13/2025 | Invoice | 274048730 | Unit 1327 Rent: (Jan 13, 2025 thru Feb 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 1/13/2025 | Invoice | 274048730 | Insurance 2000 coverage: (Jan 13, 2025 thru Feb 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 1/13/2025 | Payment | 274049030 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 2/13/2025 | Invoice | 279672346 | Unit 1327 Rent: (Feb 13, 2025 thru Mar 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 2/13/2025 | Invoice | 279672346 | Insurance 2000 coverage: (Feb 13, 2025 thru Mar 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 2/13/2025 | Payment | 279672599 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 3/13/2025 | Invoice | 285286170 | Unit 1327 Rent: (Mar 13, 2025 thru Apr 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 3/13/2025 | Invoice | 285286170 | Insurance 2000 coverage: (Mar 13, 2025 thru Apr 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 3/13/2025 | Payment | 285286470 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 4/13/2025 | Invoice | 291032036 | Unit 1327 Rent: (Apr 13, 2025 thru May 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 4/13/2025 | Invoice | 291032036 | Insurance 2000 coverage: (Apr 13, 2025 thru May 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 4/13/2025 | Payment | 291032266 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 5/13/2025 | Invoice | 296779032 | Unit 1327 Rent: (May 13, 2025 thru Jun 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 5/13/2025 | Invoice | 296779032 | Insurance 2000 coverage: (May 13, 2025 thru Jun 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 5/13/2025 | Payment | 296779400 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 6/13/2025 | Invoice | 302679496 | Unit 1327 Rent: (Jun 13, 2025 thru Jul 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 6/13/2025 | Invoice | 302679496 | Insurance 2000 coverage: (Jun 13, 2025 thru Jul 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 6/13/2025 | Payment | 302679865 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 7/13/2025 | Invoice | 308620813 | Unit 1327 Rent: (Jul 13, 2025 thru Aug 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |



Exhibit C1

ExtraSpace Storage

# Rental Ledger - Julie Carter-1503474842 (Unit #1327)

1583 - Chesapeake - Woodlake Dr

| [illegible] | [illegible] | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 327 | 2000564787 | 7/13/2025 | Invoice | 308620813 | Insurance 2000 coverage: (Jul 13, 2025 thru Aug 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 7/13/2025 | Payment | 308621269 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 8/13/2025 | Invoice | 314600095 | Unit 1327 Rent: (Aug 13, 2025 thru Sep 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 8/13/2025 | Invoice | 314600095 | Insurance 2000 coverage: (Aug 13, 2025 thru Sep 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 8/18/2025 | Invoice | 315477793 | Late Fee (20/20) | 20.80 | 20.80 | 0.00 | 155.79 |
| | | 8/18/2025 | Sales Order | 315554973 | Visa - 972502 Last4 - 5028 | 135.80 | 0.00 | 135.80 | 19.99 |
| | | 9/13/2025 | Invoice | 320632722 | Unit 1327 Rent: (Sep 13, 2025 thru Oct 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 9/13/2025 | Invoice | 320632722 | Insurance 2000 coverage: (Sep 13, 2025 thru Oct 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 9/18/2025 | Invoice | 321490444 | Late Fee (20/20) | 20.80 | 20.80 | 0.00 | 155.79 |
| | | 10/13/2025 | Invoice | 326560282 | Unit 1327 Rent: (Oct 13, 2025 thru Nov 12, 2025) | 104.00 | 104.00 | 0.00 | 259.79 |
| | | 10/13/2025 | Invoice | 326560282 | Insurance 2000 coverage: (Oct 13, 2025 thru Nov 12, 2025) | 11.00 | 11.00 | 0.00 | 270.79 |
| | | 10/18/2025 | Invoice | 327450838 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 390.79 |
| | | 10/18/2025 | Invoice | 327450901 | Late Fee (20/20) | 20.80 | 20.80 | 0.00 | 411.59 |
| | | 11/8/2025 | Sales Order | 331787435 | Visa - 183711 Last4 - 1684 | 391.60 | 0.00 | 391.60 | 19.99 |
| | | 11/13/2025 | Invoice | 332535698 | Unit 1327 Rent: (Nov 13, 2025 thru Dec 12, 2025) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 11/13/2025 | Invoice | 332535698 | Insurance 2000 coverage: (Nov 13, 2025 thru Dec 12, 2025) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 11/18/2025 | Invoice | 333408457 | Late Fee (20/20) | 20.80 | 20.80 | 0.00 | 155.79 |
| | | 11/19/2025 | Payment | 333673731 | EasyPay - Visa Last4 - 5028 | 135.80 | 0.00 | 135.80 | 19.99 |
| | | 12/13/2025 | Invoice | 338485740 | Unit 1327 Rent: (Dec 13, 2025 thru Jan 12, 2026) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 12/13/2025 | Invoice | 338485740 | Insurance 2000 coverage: (Dec 13, 2025 thru Jan 12, 2026) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 12/13/2025 | Payment | 338486078 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |
| | | 1/13/2026 | Invoice | 344371749 | Unit 1327 Rent: (Jan 13, 2026 thru Feb 12, 2026) | 104.00 | 104.00 | 0.00 | 123.99 |
| | | 1/13/2026 | Invoice | 344371749 | Insurance 2000 coverage: (Jan 13, 2026 thru Feb 12, 2026) | 11.00 | 11.00 | 0.00 | 134.99 |
| | | 1/13/2026 | Payment | 344372116 | EasyPay - Visa Last4 - 5028 | 115.00 | 0.00 | 115.00 | 19.99 |

Total records: 208



Exhibit C1

# Rental Ledger - Julie Locanas-1507255365 (Unit #1350)

1583 - Chesapeake - Woodlake Dr

Exhibit C2

| Unit # | Account Number | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1350 | 2003016311 | **1/29/2026** | | | | | | | |
| | | 8/30/2023 | Sales Order | 186223659 | Unit 1350 Rent: (Aug 30, 2023 thru Sep 29, 2023) | 40.00 | 40.00 | 0.00 | 40.00 |
| | | 8/30/2023 | Sales Order | 186223659 | Insurance 2000 coverage: (Aug 30, 2023 thru Sep 29, 2023) | 11.00 | 11.00 | 0.00 | 51.00 |
| | | 8/30/2023 | Sales Order | 186223659 | Administration Fee | 29.00 | 29.00 | 0.00 | 80.00 |
| | | 8/30/2023 | Sales Order | 186223659 | ES-670 2 3/4 Disc Padlock | 19.99 | 19.99 | 0.00 | 99.99 |
| | | 8/30/2023 | Sales Order | 186223659 | Virginia - 4.3000% | 0.86 | 0.86 | 0.00 | 100.85 |
| | | 8/30/2023 | Sales Order | 186223659 | Chesapeake City - 1.0000% | 0.20 | 0.20 | 0.00 | 101.05 |
| | | 8/30/2023 | Sales Order | 186223659 | Hampton Roads Region - 0.7000% | 0.14 | 0.14 | 0.00 | 101.19 |
| | | 8/30/2023 | Sales Order | 186223659 | Visa - Last4 - 4103 | 101.19 | 0.00 | 101.19 | 0.00 |
| | | 9/30/2023 | Invoice | 191338231 | Unit 1350 Rent: (Sep 30, 2023 thru Oct 29, 2023) | 40.00 | 40.00 | 0.00 | 40.00 |
| | | 9/30/2023 | Invoice | 191338231 | Insurance 2000 coverage: (Sep 30, 2023 thru Oct 29, 2023) | 11.00 | 11.00 | 0.00 | 51.00 |
| | | 10/5/2023 | Invoice | 192669347 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 71.00 |
| | | 10/30/2023 | Invoice | 196447229 | Unit 1350 Rent: (Oct 30, 2023 thru Nov 29, 2023) | 40.00 | 40.00 | 0.00 | 111.00 |
| | | 10/30/2023 | Invoice | 196447229 | Insurance 2000 coverage: (Oct 30, 2023 thru Nov 29, 2023) | 11.00 | 11.00 | 0.00 | 122.00 |
| | | 11/4/2023 | Invoice | 197697881 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 242.00 |
| | | 11/4/2023 | Invoice | 197697997 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 262.00 |
| | | 11/30/2023 | Invoice | 201620946 | Unit 1350 Rent: (Nov 30, 2023 thru Dec 29, 2023) | 40.00 | 40.00 | 0.00 | 302.00 |
| | | 11/30/2023 | Invoice | 201620946 | Insurance 2000 coverage: (Nov 30, 2023 thru Dec 29, 2023) | 11.00 | 11.00 | 0.00 | 313.00 |
| | | 12/30/2023 | Invoice | 206747742 | Unit 1350 Rent: (Dec 30, 2023 thru Jan 29, 2024) | 80.00 | 80.00 | 0.00 | 393.00 |
| | | 1/30/2024 | Invoice | 211876035 | Unit 1350 Rent: (Jan 30, 2024 thru Feb 29, 2024) | 80.00 | 80.00 | 0.00 | 473.00 |
| | | 1/31/2024 | Sales Order | 212030334 | Visa - 621818 Last4 - 4103 | 473.00 | 0.00 | 473.00 | 0.00 |
| | | 3/1/2024 | Invoice | 217317609 | Unit 1350 Rent: (Mar 1, 2024 thru Mar 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 3/6/2024 | Invoice | 218563549 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 100.00 |
| | | 3/7/2024 | Sales Order | 218805668 | Visa - 075709 Last4 - 5028 | 100.00 | 0.00 | 100.00 | 0.00 |
| | | 3/30/2024 | Invoice | 222247858 | Unit 1350 Rent: (Mar 30, 2024 thru Apr 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 3/30/2024 | Payment | 222280994 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 4/30/2024 | Invoice | 227524730 | Unit 1350 Rent: (Apr 30, 2024 thru May 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 4/30/2024 | Payment | 227558867 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 5/30/2024 | Invoice | 232871314 | Unit 1350 Rent: (May 30, 2024 thru Jun 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 5/30/2024 | Payment | 232871736 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 6/30/2024 | Invoice | 238321333 | Unit 1350 Rent: (Jun 30, 2024 thru Jul 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 6/30/2024 | Payment | 238321701 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 7/30/2024 | Invoice | 243749678 | Unit 1350 Rent: (Jul 30, 2024 thru Aug 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 7/30/2024 | Payment | 243749894 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 8/30/2024 | Invoice | 249295168 | Unit 1350 Rent: (Aug 30, 2024 thru Sep 29, 2024) | 80.00 | 80.00 | 0.00 | 80.00 |
| | | 8/30/2024 | Payment | 249295508 | EasyPay - Visa Last4 - 5028 | 80.00 | 0.00 | 80.00 | 0.00 |
| | | 9/30/2024 | Invoice | 254756146 | Unit 1350 Rent: (Sep 30, 2024 thru Oct 29, 2024) | 97.00 | 97.00 | 0.00 | 97.00 |

ExtraSpace Storage

# Rental Ledger - Julie Locanas-1507255365 (Unit #1350)

1583 - Chesapeake - Woodlake Dr

| Unit # | Account Number | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1350 | 2003016311 | 9/30/2024 | Payment | 254756464 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 10/30/2024 | Invoice | 260236824 | Unit 1350 Rent: (Oct 30, 2024 thru Nov 29, 2024) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 10/30/2024 | Payment | 260237017 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 11/30/2024 | Invoice | 265768114 | Unit 1350 Rent: (Nov 30, 2024 thru Dec 29, 2024) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 11/30/2024 | Payment | 265768344 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 12/30/2024 | Invoice | 271269912 | Unit 1350 Rent: (Dec 30, 2024 thru Jan 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 1/4/2025 | Invoice | 272556887 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 117.00 |
| | | 1/6/2025 | Payment | 273016690 | EasyPay - Visa Last4 - 5028 | 117.00 | 0.00 | 117.00 | 0.00 |
| | | 1/30/2025 | Invoice | 276889276 | Unit 1350 Rent: (Jan 30, 2025 thru Feb 28, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 1/30/2025 | Payment | 276889561 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 3/1/2025 | Invoice | 282952427 | Unit 1350 Rent: (Mar 1, 2025 thru Mar 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 3/1/2025 | Payment | 282953678 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 3/30/2025 | Invoice | 288186582 | Unit 1350 Rent: (Mar 30, 2025 thru Apr 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 4/4/2025 | Invoice | 289474949 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 117.00 |
| | | 4/30/2025 | Invoice | 293919065 | Unit 1350 Rent: (Apr 30, 2025 thru May 29, 2025) | 97.00 | 97.00 | 0.00 | 214.00 |
| | | 5/4/2025 | Invoice | 295233892 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 334.00 |
| | | 5/4/2025 | Invoice | 295233926 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 354.00 |
| | | 5/14/2025 | Payment | 297045750 | EasyPay - Visa Last4 - 5028 | 354.00 | 0.00 | 354.00 | 0.00 |
| | | 5/30/2025 | Invoice | 299770959 | Unit 1350 Rent: (May 30, 2025 thru Jun 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 6/4/2025 | Invoice | 301102288 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 117.00 |
| | | 6/4/2025 | Payment | 301184608 | EasyPay - Visa Last4 - 5028 | 117.00 | 0.00 | 117.00 | 0.00 |
| | | 6/30/2025 | Invoice | 305700674 | Unit 1350 Rent: (Jun 30, 2025 thru Jul 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 7/5/2025 | Invoice | 307191376 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 117.00 |
| | | 7/16/2025 | Payment | 309214588 | EasyPay - Visa Last4 - 5028 | 117.00 | 0.00 | 117.00 | 0.00 |
| | | 7/30/2025 | Invoice | 311659400 | Unit 1350 Rent: (Jul 30, 2025 thru Aug 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 7/30/2025 | Payment | 311659649 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 8/30/2025 | Invoice | 317719858 | Unit 1350 Rent: (Aug 30, 2025 thru Sep 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 8/30/2025 | Payment | 317720077 | EasyPay - Visa Last4 - 5028 | 97.00 | 0.00 | 97.00 | 0.00 |
| | | 9/30/2025 | Invoice | 323679834 | Unit 1350 Rent: (Sep 30, 2025 thru Oct 29, 2025) | 97.00 | 97.00 | 0.00 | 97.00 |
| | | 10/5/2025 | Invoice | 325177975 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 117.00 |
| | | 10/30/2025 | Invoice | 329615666 | Unit 1350 Rent: (Oct 30, 2025 thru Nov 29, 2025) | 97.00 | 97.00 | 0.00 | 214.00 |
| | | 11/4/2025 | Invoice | 330935461 | Pre-Foreclosure Fee ($120) | 120.00 | 120.00 | 0.00 | 334.00 |
| | | 11/4/2025 | Invoice | 330935523 | Late Fee (20/20) | 20.00 | 20.00 | 0.00 | 354.00 |
| | | 11/17/2025 | Sales Order | 333316030 | Visa - 826259 Last4 - 1684 | 354.00 | 0.00 | 354.00 | 0.00 |
| | | 11/30/2025 | Invoice | 335604549 | Unit 1350 Rent: (Nov 30, 2025 thru Dec 29, 2025) | 110.00 | 110.00 | 0.00 | 110.00 |
| | | 12/5/2025 | Invoice | 337065435 | Late Fee (20/20) | 22.00 | 22.00 | 0.00 | 132.00 |

Exhibit C2

ExtraSpace Storage

# Rental Ledger - Julie Locanas-1507255365 (Unit #1350)

1583 - Chesapeake - Woodlake Dr

| Unit # | Account Number | PTD / Tran Date | Line Type | Tran # | Item Description | Line Amount | Charge Amount | Credit Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1350 | 2003016311 | 12/29/2025 | Payment | 341377957 | EasyPay - Visa Last4 - 5028 | 132.00 | 0.00 | 132.00 | 0.00 |
| | | 12/30/2025 | Invoice | 341468922 | Unit 1350 Rent: (Dec 30, 2025 thru Jan 29, 2026) | 110.00 | 110.00 | 0.00 | 110.00 |
| | | 12/30/2025 | Payment | 341469222 | EasyPay - Visa Last4 - 5028 | 110.00 | 0.00 | 110.00 | 0.00 |
| | | | | | | | | | Total records: 75 |

Exhibit C2

# ;ubject: Request for Transparency on Insurance ;ommunications – Unit #1350 & #1327

messages

**u C** <juloc21@gmail.com> Fri, Mar 7, 2025 at 6:03 PM
o: FAC1583@extraspace.com <FAC1583@extraspace.com>
cc: adriancscarter@gmail.com <adriancscarter@gmail.com>

Dear ESS Management Team

I am following up on my previous request regarding documentation and security footage related to the break-in of my storage unit(s) #1350 & #1327 at Extra Space Storage (659 Woodlake Dr, Chesapeake, VA).

As this matter is now under insurance review, I want to ensure full transparency regarding any communications between Extra Space Storage and my insurance provider.

I am formally requesting a copy of any and all documentation, reports, or security information that has been, or will be, sent to my insurance company.** If you intend to communicate directly with them regarding this matter, I would appreciate being CC'd on any correspondence.

Additionally, please confirm whether you have provided my insurer with:
1. Details on the latch replacement prior to the break-in.
2. A full incident report, including any internal facility documentation on security concerns.
3. Any available security footage or confirmation of footage retention.

Exhibit C3

Unfortunately I've been denied already due coverage and want to make sure at least (after all that was stolen) I'm able to receive some type of compensation regardless the amount.
My legal counsel has advised me to maintain thorough records of this process, I kindly request your confirmation of receipt of this email and a response within five (3) business days.

Thank you for your cooperation.

Sincerely,
Julie Locanas Carter
(562)286-4763
Adrian C. Carter
(757)633-4038

---

**u C** <juloc21@gmail.com> Mon, Mar 17, 2025 a 8:20 AM

o: FAC1583@extraspace.com
cc: adriancscarter@gmail.com <adriancscarter@gmail.com>

This is my third request at seeking information which is prevalent to my ongoing case (insurance). I've requested all and any relevant material/information in regards to the burglary of our units (1327&1350) around the 28th day of March 2025. Any information will help.

Thank You,
Adrian Carter
Julie Locanas-Carter
[Quoted text hidden]

---

**z 1583 Chesapeake - Woodlake Dr Site** Tue, Mar 18, 2025
fac1583@extraspace.com> at 7:07 AM
o: Ju C <juloc21@gmail.com>

Exhibit C3

Good morning,

Extra Space Storage policy is we do not provide ootage or internal documents to tenants or third parties, you will have to work with the police.

**Storage unit 1327** $2000 coverage

Here's is the information for filing a claim with Customer Protection Plan (CPP)

The unexpected can happen in an instant, but you repare with the Customer Protection Plan.

| | |
|---|---|
| ile a Claim: | www.cppclaims.com |
| lam Status: | www.cppclaims.com |
| laim Questions: | cppclaimsteam@esis.com |
| nsurance Questions: | cpp@bbrown.com |
| oll-free: | 1-877-326-3824 |

**torage Unit 1350** *No coverage

surance was cancelled on 12/28/2023 due to onpayment.

Exhibit C3

Thank you.

**mae sagun | district team lead | extra space storage**

**thomasine robertson crandle | assistant manager | extra space storage**

**TBD | assistant manager l extra space storage**

p. 757.570.9165 | 659 woodlake drive, chesapeake, va 23320 | extraspace.com

*This e-mail (including attachments) is privileged and confidential and is intended only for addressee(s) listed above. The sender doesn't waive any rights or privileges regarding this information. The sender is not authorized to enter any contract via e-mail. The recipient is not authorized to distribute or copy this message. If message was received in error, please notify sender and delete.*

*This e-mail (including attachments) is privileged and confidential and is intended only for addressee(s) listed above. The sender doesn't waive any rights or privileges regarding this information. The sender is not authorized to enter any contract via e-mail. The recipient is not authorized to distribute or copy this message. If message was received in error, please notify sender and delete.*

Exhibit C3

**From:** Ju C <juloc21@gmail.com>
**Sent:** Monday, March 17, 2025 11:20 AM
**To:** zz 1583 Chesapeake - Woodlake Dr Site <fac1583@extraspace.com>
**Subject:** Re: Subject: Request for Transparency on Insurance Communications – Unit #1350 & #1327

**CAUTION:** External email. THINK before you click!

[Quoted text hidden]

Exhibit C3

Exhibit D1

## ase #2024-00043899 or #2024-38569

messages

C <juloc21@gmail.com> Wed, Apr 24, 2024 at 1:29 AI
: jsfisher@cityofchesapeake.net

Hello Detective Fisher,

We spoke last week regarding the theft at Extra Space Storage in Chesapeake where I currently have 2 storage units. Units 1327 and 1350. My apologies for the delay as I haven't been feeling well for the past several days and I wanted to ensure I gave as much info as possible. If you need additional information or have further questions, please don't hesitate to contact me via email or cell (however email may be more efficient for me)

Julie Locanas
562-286-4763
Unit 1327 & Unit 1350 at Extra Space Woodlake

**2 attachments**

**Apr2024 ES notes.pdf**
57 KB

**Mar2024 ES notes.pdf**
47 KB

**remy Fisher** <jsfisher@cityofchesapeake.net> Wed, Apr 24, 2024 at 5:41 AI
: Ju C <juloc21@gmail.com>

Received thank you!

Detective J.S. Fisher
Chesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173

**From:** Ju C <juloc21@gmail.com>
**Sent:** Wednesday, April 24, 2024 4:29 AM
**To:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
**Subject:** Case #2024-00043899 or #2024-38569

**ALERT**:External E-mail. Use caution when opening attachments or clicking links.

[Quoted text hidden]

**i C** <juloc21@gmail.com> Wed, Apr 24, 2024 at 8:35 PI
): Jeremy Fisher <jsfisher@cityofchesapeake.net>

I am getting receipts together now and should have that ready hopefully soon. I also have pictures of Unit 1350 in January (when it was in auction) and although I didnt have recent pics taken after we dropped off several 18 and 30 gallon totes, I DID take pictures of what I arrived to on the 9th. How would you like me to submit those attachments? To your email or with that link that I had originally used for the list of stolen items?

Thanks in advance for your help Detective Fisher!

JulieCarter
[Quoted text hidden]

**eremy Fisher** <jsfisher@cityofchesapeake.net> Thu, Apr 25, 2024 at 5:05 AI
): Ju C <juloc21@gmail.com>

If you can send them to the link that would be great! Thank you!

Exhibit D2

)etective J.S. Fisher
:hesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173

---

**From:** Ju C <juloc21@gmail.com>
**Sent:** Wednesday, April 24, 2024 11:35 PM
**To:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
**Subject:** Re: Case #2024-00043899 or #2024-38569

Quoted text hidden]

---

**C** <juloc21@gmail.com> Thu, Apr 25, 2024 at 9:50 Al
: Jeremy Fisher <jsfisher@cityofchesapeake.net>

Ok. That link will expire in 2 days so if I dont get the info by then I will contact you for a new link.

Are there any new updates on the case or any leads? Also was curious if the theft victims are able to review footage at all? Looking back at our Location History and cell records we know the EXACT DAYS/times we were there and also would be able to recognize the suspicious car that appeared to be watching.

Thank you again,

JulieCarter
[Quoted text hidden]

---

**remy Fisher** <jsfisher@cityofchesapeake.net> Thu, Apr 25, 2024 at 10:43 Al
: Ju C <juloc21@gmail.com>

At this current time there are no current updates. I retrieved the video earlier in the week and attempted to watch it however, it is not allowing me to. I sent the company an email asking to make another one in a different format and to contact me when the video is ready. I can not allow you to watch the video once its obtained as its evidence. If you give me times and dates I can look at them. If the store will allow you to view the footage that is also fine.

Detective J.S. Fisher
Chesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173

---

**From:** Ju C <juloc21@gmail.com>
**Sent:** Thursday, April 25, 2024 12:50 PM
[Quoted text hidden]

[Quoted text hidden]

---

**ı C** <juloc21@gmail.com> Mon, Jun 24, 2024 at 10:11 Pl
›: BbyDdy/HubbZ <chiinap@gmail.com>

——— Forwarded message ———
From: **Ju C** <juloc21@gmail.com>
Date: Wed, Apr 24, 2024 at 1:29 AM
Subject: Case #2024-00043899 or #2024-38569
To: <jsfisher@cityofchesapeake.net>
[Quoted text hidden]

---

**2 attachments**

**Apr2024 ES notes.pdf**
57 KB

**Mar2024 ES notes.pdf**
47 KB

Exhibit D3

'es I've heard that as well yet not too sure if anything was actually taken. Were you able to obtain any video footage or anything useful in the case as ›f yet? Or did ESS ever grant you your request of another video? Adrian and I pretty much have an inclination of who the person was, so we're trying to ›btain as much information as possible.

'hank You,
Iulie Carter
Quoted text hidden]

**Outlook-f2sldwqy.png**
17 KB

---

**'emy Fisher** <jsfisher@cityofchesapeake.net> Mon, Mar 17, 2025 at 12:52 PI
Ju C <juloc21@gmail.com>

The video I got would not play and requested another one, but it was never produced.

Detective J.S. Fisher
Chesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173

**From:** Ju C <juloc21@gmail.com>
**Sent:** Thursday, March 13, 2025 1:55 PM
Quoted text hidden]

Quoted text hidden]

---

**C** <juloc21@gmail.com> Wed, Apr 2, 2025 at 2:11 AI
: Jeremy Fisher <jsfisher@cityofchesapeake.net>
: Adrian Carter <chiinap@gmail.com>

Nhat can we do as the victims to pursue some type of action from them? Its disappointing that the request you made almost a year ago now in 'egards to video footage was left ignored. But doesn't that inadvertently display some type of egregious behavior? Adrian was attempting to discuss :his with you back when the case was first assigned and though life decided to throw several other unfortunate events our way he was and is STILL eager to bring to justice any and all individuals involved in this. We are coordinating efforts in establishing a civil case against them so we would like :o retrieve any and all information of investigation efforts thus far so your assistance would be greatly appreciated.

JulieCarter
Quoted text hidden]

---

**remy Fisher** <jsfisher@cityofchesapeake.net> Mon, Apr 7, 2025 at 5:37 AI
: Ju C <juloc21@gmail.com>

Exhibit D

ɔood morning,

hope all is well. It is my understanding y'all already did a FOIA request through the department which is the first step as I ım not allowed to send anything to people without the request.


)etective J.S. Fisher
:hesapeake Police Department
:04 Albemarle Drive Chesapeake, VA 23322
'57-382-6173


---

**rom:** Ju C <juloc21@gmail.com>
**ent:** Wednesday, April 2, 2025 5:11 AM
**o:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
**:c:** Adrian Carter <chiinap@gmail.com>
)uoted text hidden]

)uoted text hidden]

---

C <juloc21@gmail.com> Mon, Apr 7, 2025 at 6:41 AI
ıft To: Jeremy Fisher <jsfisher@cityofchesapeake.net>

)k I wasn't aware of that per se. But him and I have been trying to gather all pertinent information/material that will cement our case as stated before. t's taken us longer than most not being well versed in the legal process. Our education pertaining to the legal process is limited to HLN and ID :hannel. Lol. But any how we're trying to retrace the steps of a certain individual who actually works/or use to work at the establishment. He at time ıe possessed all the tools and means to cultivate such a feat without going unnoticed. After comparing our notes with some of the claims he had ;tated everything else came into reason. I know you stated once before one can not make such a claim but I always thought you have to have some ;ound reason to suspect an individual before anything.

)n Mon, Apr 7, 2025, 5:37 AM Jeremy Fisher <jsfisher@cityofchesapeake.net> wrote:


Good morning,

I hope all is well. It is my understanding y'all already did a FOIA request through the department which is the first step as I am not allowed to send anything to people without the request.


Chesapeake VIRGINIA


Detective J.S. Fisher
Chesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173


---


**From:** Ju C <juloc21@gmail.com>
**Sent:** Wednesday, April 2, 2025 5:11 AM
**To:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
**Cc:** Adrian Carter <chiinap@gmail.com>

**Subject:** Re: Case #2024-00043899 or #2024-38569

**ALERT**:External E-mail. Use caution when opening attachments or clicking links.

What can we do as the victims to pursue some type of action from them? Its disappointing that the request you made almost a year ago now in regards to video footage was left ignored. But doesn't that inadvertently display some type of egregious behavior? Adrian was attempting to discuss this with you back when the case was first assigned and though life decided to throw several other unfortunate events our way he was and is STILL eager to bring to justice any and all individuals involved in this. We are coordinating efforts in establishing a civil case against them so we would like to retrieve any and all information of investigation efforts thus far so your assistance would be greatly appreciated.

JulieCarter

On Mon. Mar 17. 2025 at 12:52 PM Jeremv Fisher <isfisher@citvofchesapeake.net> wrote:

Exhibit D5

Chesapeake VIRGINIA

Detective J.S. Fisher
Chesapeake Police Department
304 Albemarle Drive Chesapeake, VA 23322
757-382-6173

---

**From:** Ju C <juloc21@gmail.com>
**Sent:** Thursday, March 13, 2025 1:55 PM

**To:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
**Subject:** Re: Case #2024-00043899 or #2024-38569

**ALERT**:External E-mail. Use caution when opening attachments or clicking links.

Yes I've heard that as well yet not too sure if anything was actually taken. Were you able to obtain any video footage or anything useful in the case as of yet? Or did ESS ever grant you your request of another video? Adrian and I pretty much have an inclination of who the person was, so we're trying to obtain as much information as possible.

Thank You,
Julie Carter

On Wed, Mar 12, 2025, 8:53 AM Jeremy Fisher <jsfisher@cityofchesapeake.net> wrote:

> Good morning/afternoon Mrs. Carter,
>
> Unfortunately, I was unable to get any additional information in regard to your case. I can tell you were not the only victims as there were multiple units broken into around the given time frame.
>
> Detective J.S. Fisher
> Chesapeake Police Department
> 304 Albemarle Drive Chesapeake, VA 23322
> 757-382-6173
>
> ---
>
> **From:** Ju C <juloc21@gmail.com>
> **Sent:** Friday, March 7, 2025 1:08 AM
> **To:** Jeremy Fisher <jsfisher@cityofchesapeake.net>
> **Subject:** Re: Case #2024-00043899 or #2024-38569
>
> **ALERT**:External E-mail. Use caution when opening attachments or clicking links.
>
> Hello Det. Fisher,
>
> I hope all is well with you. I'm reaching out to you in hopes there might be an update of some sort regarding the aforementioned case? Unfortunately we're still dealing with the aftermath of it. My husband and I decided to take matters into our own hands as in regards to representation and legwork. If there's anything you can add to the case that would be greatly appreciated.
>
> Respectfully Yours,
> Julie Carter
>
> On Wed, Apr 24, 2024, 1:29 AM Ju C <juloc21@gmail.com> wrote:
>
>> Hello Detective Fisher,
>>
>> We spoke last week regarding the theft at Extra Space Storage in Chesapeake where I currently have 2 storage units. Units 1327 and 1350. My apologies for the delay as I haven't been feeling well for the past several days and I wanted to ensure I gave as much info as possible. If you need additional information or have further questions, please don't hesitate to contact me via email or cell (however email may be more

Exhibit 12

Julie Locanas
562-286-4763
Unit 1327 & Unit 1350 at Extra Space Woodlake

2 attachments

Outlook-kycs2r0g.png
17 KB

Outlook-qpcm5ami.png
17 KB

C <juloc21@gmail.com> Mon, Apr 7, 2025 at 6:45 AM
jsfisher@cityofchesapeake.net

appreciate your previous guidance on this matter. My husband and I have been diligently collecting relevant information and evidence to strengthen ur case, though it has taken us longer than anticipated due to our limited familiarity with legal procedures.

/e've been carefully retracing the activities of an individual who is/was employed at the establishment in question. Based on our investigation, this erson had both the access and means to carry out such actions without detection. After comparing our documentation with statements he has ıade, we've identified several concerning patterns that warrant further investigation.

understand that formal allegations require substantiation, but I believe we've gathered sufficient reasonable grounds to justify our suspicions about ıis individual. We would appreciate your professional assessment of the information we've compiled.

ulie Locanas Carter

ın Wed, Apr 24, 2024, 1:29 AM Ju C <juloc21@gmail.com> wrote:
quoted text hidden]

C <juloc21@gmail.com> Fri, Jan 9, 2026 at 11:17 PM
ft To: jsfisher@cityofchesapeake.net

ın Mon, Apr 7, 2025, 6:45 AM Ju C <juloc21@gmail.com> wrote:

> I appreciate your previous guidance on this matter. My husband and I have been diligently collecting relevant information and evidence to strengthen our case, though it has taken us longer than anticipated due to our limited familiarity with legal procedures.
>
> We've been carefully retracing the activities of an individual who is/was employed at the establishment in question. Based on our investigation, this person had both the access and means to carry out such actions without detection. After comparing our documentation with statements he has made, we've identified several concerning patterns that warrant further investigation.
>
> I understand that formal allegations require substantiation, but I believe we've gathered sufficient reasonable grounds to justify our suspicions about this individual. We would appreciate your professional assessment of the information we've compiled.
>
> Julie Locanas Carter
>
> On Wed, Apr 24, 2024, 1:29 AM Ju C <juloc21@gmail.com> wrote:
>> Hello Detective Fisher,
>>
>> We spoke last week regarding the theft at Extra Space Storage in Chesapeake where I currently have 2 storage units. Units 1327 and 1350. My apologies for the delay as I haven't been feeling well for the past several days and I wanted to ensure I gave as much info as possible. If you need additional information or have further questions, please don't hesitate to contact me via email or cell (however email may be more efficient for me)
>>
>> Julie Locanas
>> 562-286-4763
>> Unit 1327 & Unit 1350 at Extra Space Woodlake

Julie Locanas-Carter, Pro Se
1627 East Holt Blvd
Ontario, California 91761
juloc21@gmail.com
562-286-4763
Adrian C. Carter, Pro Se
1627 East Holt Blvd
Ontario, California 91761
adriancscarter@gmail.com
757-633-4038
Date: 7/6/26
Clerk of Court
Circuit Court for the City of Chesapeake
Chesapeake, Virginia
Re: New Civil Filing — Request for Service

2026 JUL 6 PM 4:41
CHESAPEAKE CIRCUIT CLK

Dear Clerk:
Please file the attached Complaint and Jury Demand in the matter of Julie Locanas-Carter and Adrian C. Carter v. Extra Space Storage, Inc.
Plaintiffs request issuance of service on the Defendant's registered agent at the following address:
Extra Space Storage, Inc.
c/o CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, Virginia 23060
Enclosed please find:

a. Original Complaint and Jury Demand;
b. Copies for service and file-stamped return;
c. Exhibit materials;
d. Civil cover sheet, if required; and
e. Filing fee and service fee.

Thank you for your assistance.
Respectfully submitted,

______________________

Julie Locanas-Carter, Pro Se

______________________

Adrian C. Carter, Pro Se